```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
```

| | |
|---|---|
| **BRENDA GLASS,** )<br>)<br>   Plaintiff,                        )<br>)<br>v.                                  )<br>)<br>**NORTHWEST AIRLINES, INC; DELTA**   )<br>**AIRLINES, INC; PINNACLE AIRLINES,** )<br>**INC.; PINNACLE AIRLINES CORP.;**    )<br>**AIR SERV CORP.; MEMPHIS-SHELBY**    )<br>**COUNTY AIRPORT AUTHORITY,**         )<br>)<br>)<br>   **Defendants.**                     ) | **Case No. 09-2206** |

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

Before the Court are separate Motions to Dismiss filed on July 13, 2009, by Defendants Delta Airlines, Inc. ("Delta"); Pinnacle Airlines Corporation ("PAC"); and the Memphis-Shelby County Airport Authority ("Airport Authority"). (See Dkt. Nos. 33-35.) Plaintiff Brenda Glass responded in opposition on July 20, 2009. All three Defendants argue that the Plaintiff's Amended Complaint fails to plead any claim against them with the specificity required by the Supreme Court's recent holdings in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Airport Authority raises the additional issue of this Court's jurisdiction to hear Plaintiff's claims against it. For the

following reasons, the Court GRANTS Defendant PAC's Motion to Dismiss and DENIES the Motions of Defendants Delta and the Airport Authority.

**I.     BACKGROUND**

Clarence Glass, a resident of Muskegon, Michigan, boarded Northwest Airlines flight 5930 from Grand Rapids, Michigan, to Memphis, Tennessee, on September 9, 2008. (Amended Compl. ¶¶ 10-11.) Glass' ticket bore the indication "WCHS," meaning that Glass had requested wheelchair assistance upon arrival at the Memphis International Airport. (Id. ¶ 13.) The Grand Rapids flight landed in Memphis at approximately 8:30 AM at gate A7. Glass was the first passenger to deplane. (Id. ¶¶ 15-16.) Walking with the assistance of his walker, Glass met gate personnel who instructed him to wait at the gate for his wheelchair's arrival. (Id. ¶ 18.)

No one arrived with a wheelchair for Glass. After approximately five minutes, gate personnel instructed Glass that he could walk to gate A19 or the baggage claim area to meet his wheelchair. (Id. ¶¶ 19-20.) Glass walked from gate A7 toward gate A19, using his walker. (Id. ¶ 21.) Near gate A10, Glass encountered an escalator that led down to the portion of the terminal where gate A19 is located. When Glass attempted to descend the escalator, he lost his balance and fell to the bottom, severely injuring himself. (Id. ¶ 23.) Glass died of

his injuries on July 20, 2009. (See Suggestion of Death, Dkt. No. 47.)

Glass, through his daughter and next friend Brenda Glass, filed the instant suit on April 6, 2009, against Defendants Northwest Airlines, Inc.; Delta; Pinnacle Airlines, Inc.; PAC; Air Serv Corp.; and the Airport Authority. (Compl. at 1.) The Amended Complaint seeks a total of $2.3 million in compensatory damages and an additional $5 million in punitive damages. (Amended Compl. ¶¶ 33-35.) After her father's death, Brenda Glass sought leave of the Court to substitute herself as the named Plaintiff and amend the Original Complaint to reflect the case's new posture. (See Motion to Substitute Party, Dkt. No. 48; First Motion to Amend/Correct Complaint, Dkt. No. 55.) The Court granted Glass' Motion to Substitute at a January 12, 2010, status conference. (See Dkt. No. 99.) By Order dated January 20, 2010, the Court also granted Plaintiff leave to amend the Complaint to reflect the death of Clarence Glass and the substitution of Brenda Glass as the named Plaintiff. (See Dkt. No. 101.)

**II.   JURISDICTION**

Plaintiff alleges that this Court has diversity jurisdiction over her suit. (Amended Compl. ¶ 9); see 28 U.S.C. § 1332(a)(1). Like her late father, Brenda Glass is a resident

3

of the State of Michigan.[1]  (Amended Compl. ¶¶ 1-2.)  Defendants Delta; Pinnacle Airlines, Inc.; and Air Serv are Georgia corporations.  (Id. ¶¶ 4-5, 7.)  Defendant Northwest Airlines is a Minnesota corporation.  (Id. ¶ 3.)  PAC is a Delaware corporation, and the Airport Authority is a Tennessee-chartered entity responsible for operating Memphis International Airport.  (Id. ¶¶ 6, 8.)  Therefore, complete diversity exists, and the amount in controversy exceeds $75,000.  (Id. ¶¶ 33-35 (seeking a total of $7.3 million in damages).)

Defendant Airport Authority argues that this Court lacks subject matter jurisdiction to hear Plaintiff's suit against it.  (See Aiport Authority's Memorandum in Support of Its Motion to Dismiss at 2-4.)  ("Airport Memo")  The Airport Authority notes that, because it is an agency of a municipal government, the Tennessee Governmental Tort Liability Act (the "Act") requires Plaintiff to bring suit against it under the Act's terms.  See Tenn. Code Ann. §§ 29-20-101 – 408; see also id. 42-3-103 (allowing municipalities to establish airport authorities); Memphis City Code § 12-76-20 (establishing the Airport Authority).  The Act provides that "[t]he circuit courts shall have exclusive jurisdiction over any action brought" under the Act.  Tenn. Code Ann. § 29-20-307.  Citing Beddingfield v. City

---

[1] This Court, like the parties, assumes that Tennessee substantive law applies when considering the Motion to Dismiss.

4

of Pulaski, 666 F. Supp. 1064, 1067 (M.D. Tenn. 1987), the Airport Authority asserts that this statutory provision divests the Court of jurisdiction. (Aiport Memo at 3-4.)

The Airport Authority has confused this Court's supplemental jurisdiction with the explicit constitutional grant of diversity jurisdiction. In Beddingfield, a plaintiff had brought suit under 42 U.S.C. § 1983 against officials at a municipal jail for failing to train their officers to take the appropriate precautions with inmates at high risk for suicide. 666 F. Supp. at 1065. The district court's source of jurisdiction was the general federal question jurisdiction provided by 28 U.S.C. § 1331 and Article III, Section 2 of the Constitution. Because the parties were not diverse, the only source of authority to hear the related state-law claims was the supplemental jurisdiction provided by 28 U.S.C. § 1367(a). See Beddingfield, 666 F. Supp. at 1066. Supplemental jurisdiction, however, is discretionary. See 28 U.S.C. § 1367(c)(1)-(4) (listing reasons why "district courts may decline to exercise supplemental jurisdiction"). The district court in Beddingfield determined that the Tennessee General Assembly's stated preference to have claims under the Act adjudicated in the state's circuit courts qualified as an exceptional circumstance permitting the court to decline to exercise jurisdiction over the pendant state-law claims. See 666 F. Supp. 1067; see also

5

28 U.S.C. § 1367(c)(4) (providing that a district court may decline to exercise supplemental jurisdiction "in exceptional circumstances"); Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2002) (holding that the Act's preference may serve as "an exceptional circumstance for declining [supplemental] jurisdiction"), abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health and Human Res., 532 U.S. 598, 609 (2001).

    Here, all of Glass' causes of action are in federal court based on an independent, constitutionally conferred, and statutorily authorized source of jurisdiction: diversity. See U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1332(a)(1). District courts have a duty "to adjudicate [] controvers[ies] properly before [them]." Answers in Genesis of Ky, Inc. v. Creation Ministries Int'l, Ltd., 556 F.3d 459, 467 (6th Cir. 2009) (internal quotation marks and citation omitted). As the court acknowledged in Beddingfield, the Tennessee municipality would have been unable to escape federal jurisdiction had the case fallen under the court's diversity jurisdiction. See 666 F. Supp. at 1066 ("Nor would the City be immune if the basis of jurisdiction for the state-law claim were diversity of citizenship pursuant to 28 U.S.C. § 1332." (citations omitted)). For more than 130 years it has been clear that state statutes seeking to divest all but state courts of jurisdiction over

causes of action cannot be squared with Article III's grant of the "judicial Power" to the federal courts and the Supremacy Clause.  See U.S. Const. art. III, § 2, cl.1; art. VI, cl.2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof" shall bind "the Judges in every State . . . any Thing . . . to the Contrary notwithstanding."); Cowles v. Mercer County, 74 U.S. (7 Wall) 118, 122 (1869); accord Moor v. County of Alameda, 411 U.S. 693, 717-18 (1973); Lincoln County v. Luning, 133 U.S. 529, 531 (1890).

Cowles confronted the Supreme Court with an Illinois statute, similar to the one on which the Airport Authority relies here, that sought to divest all courts other than Illinois state circuit courts of jurisdiction over certain claims.  74 U.S. at 122.  When an out-of-state plaintiff sought to sue the county to recover the proceeds due him from bonds he had purchased, the county objected on the ground that the federal trial court lacked jurisdiction.  Id.  The Supreme Court found the question of the federal courts' jurisdiction one of "but little difficulty."  Id. at 121.  The Court held that "[N]o statute limitation of suability can defeat a jurisdiction given by the Constitution.  We cannot doubt the constitutional right of [a plaintiff] to bring suit in the [federal courts]."  Id. at 122.  The Supreme Court has consistently reaffirmed this holding.  See, e.g., Moor, 411 U.S. at 717-18; Lincoln County,

7

133 U.S. at 531. Because Glass' suit falls under this Court's diversity jurisdiction, the Act cannot divest this Court of its power to adjudicate Plaintiff's claims against the Airport Authority. The Airport Authority's Motion to Dismiss for lack of subject matter jurisdiction is DENIED. Cowles, 74 U.S. at 122; Metaljan v. Memphis-Shelby County Airport Auth., 752 F. Supp. 834, 837 (W.D. Tenn. 1990) ("[O]nce [Tennessee] elected to submit itself to litigation of such claims it subjected such litigation to the provisions of the United States Constitution regarding claims between citizens of different states.").

### III.  STANDARD OF REVIEW

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing

8

that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Twombly, 550 U.S. at 555.) Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

**IV.   ANALYSIS**

Delta, PAC, and the Airport Authority argue that Plaintiff's Amended Complaint fails to state, with the required particularity, facts sufficient to constitute a cause-of-action against them. (E.g., Aiport Memo at 6.) Plaintiff responds that her Amended Complaint easily meets the "standard which is so favorable to the Plaintiff," particularly in light of the fact that this Court can only dismiss her Amended Complaint if

9

"plaintiff can prove no set of facts that would entitle [her] to relief." (Plaintiff's Response in Opposition to Defendants' Motion to Dismiss at 6.)  Plaintiff is mistaken as to the laxity of the federal pleading standards.

In its seminal opinion in Twombly, the Supreme Court expressly abrogated the "no set of facts" language Plaintiff cites.  See 550 U.S. at 563 (abrogating Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  After Twombly, all complaints must contain facts sufficient to "to state a claim to relief that is plausible on its face" if they are to survive a motion to dismiss.  550 U.S. at 570.  Mere reliance on legal conclusions stated as facts will no longer suffice.  Iqbal, 129 S. Ct. at 1949.  Viewed in this new light, Plaintiff's claim against PAC, as currently pled, cannot stand.

PAC nowhere appears in Plaintiff's recitation of the facts. (See Amended Compl. ¶¶ 10-25.)  The Court is left to wonder exactly what role an airline holding company, as opposed to the airline itself, played in denying the deceased his wheelchair. It is not this Court's duty to conjure a set of facts that would allow Plaintiff to succeed in her claim against PAC.  See Twombly, 550 U.S. at 563, 570.  Plaintiff bears the burden to explain with minimal, but sufficient, facts exactly what role PAC played in the deceased's accident.  Id. at 570; cf. Erickson, 551 U.S. at 94 (prisoner's pro se complaint met

10

standard where it alleged prison staff withheld hepatitis C medication as discipline for prisoner's alleged theft of a needle, leading to the threat of permanent damage to prisoner's health).  Because Plaintiff has failed to meet this minimal burden, PAC's Motion is GRANTED and Plaintiff's claims against it are DISMISSED WITHOUT PREJUDICE.

Delta asserts that on September 6, 2008, the date of Glass' ultimately fatal accident, it did not own or operate Co-Defendant Northwest Airlines, and therefore cannot be held liable.  (Memorandum of Law in Support of Delta's Motion to Dismiss at 2-3.)  In her Amended Complaint, Plaintiff alleges that "Defendant [Northwest Airlines] is a wholly owned subsidiary of Defendant Delta Airlines, Inc." and that "Delta operates Defendant [Northwest Airlines] through the use of employees, agents, or contractors who perform professional airline services within the course and scope of their employment."  (Amended Compl. ¶¶ 3-4.)  These employees' alleged negligence contributed to Glass' death.  (Id. ¶¶ 18-25.)  At the motion to dismiss stage, the Court must accept all well-pled factual allegations as true.  League of United Latin Am. Citizens, 500 F.3d at 527.  Delta's Motion raises an issue of fact – what control Delta had over Defendant Northwest Airlines on the date of the accident – that the Court cannot decide on a motion to dismiss.  If the facts alleged by the Plaintiff are

true, Plaintiff may be entitled to recover from Delta. The factual issue raised by Delta is more properly addressed by a motion for summary judgment. The Court, therefore, DENIES Delta's Motion to Dismiss.

The Plaintiff has similarly pled facts sufficient to survive the Airport Authority's Motion to Dismiss. The Amended Complaint alleges that the Airport Authority is responsible for the day-to-day operation of Memphis International Airport. (Amended Compl. ¶ 8.) The Amended Complaint further asserts that the Airport Authority's employees, agents, or contractors were negligent in failing to provide the decedent with a wheelchair and failing to train its employees properly about how to handle disabled passengers. (Id. ¶¶ 19-20, 29-30.) Because these facts are sufficient to state a potentially viable claim for relief against the Airport Authority, the Court DENIES its Motion to Dismiss.

### V.   CONCLUSION

For the foregoing reasons, the Court has subject matter jurisdiction over the present controversy, and Plaintiff's Amended Complaint has pled facts sufficient to state potentially viable claims against Defendants Delta and the Airport Authority. The Court, therefore, DENIES their Motions to Dismiss. Because Plaintiff has not pled sufficient facts to

12

state a plausible claim for relief against Defendant PAC, the Court GRANTS PAC's Motion to Dismiss WITHOUT PREJUDICE.

So ordered this 17th day of February, 2010.


                                    s/ Samuel H. Mays, Jr.
                                    SAMUEL H. MAYS, JR.
                                    UNITED STATES DISTRICT JUDGE