IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| BRENDA GLASS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09-2206 |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWEST AIRLINES, INC; DELTA | ) | |
| AIRLINES, INC; PINNACLE AIRLINES, | ) | |
| INC.; PINNACLE AIRLINES CORP.; | ) | |
| AIR SERV CORP.; and MEMPHIS- | ) | |
| SHELBY COUNTY AIRPORT AUTHORITY, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Brenda Glass ("Plaintiff") alleges negligence, negligence per se, and breach of contract based on an incident at Memphis International Airport (the "Airport") on September 9, 2008, in which her father, Clarence Glass ("Glass"), fell down an escalator, suffering serious injuries that allegedly caused his death. (See Am. Compl., ECF No. 104 ¶¶ 10, 23-32.)

Before the Court are three motions for summary judgment separately filed by Defendants Air Serv Corporation ("Air Serv"); Pinnacle Airlines, Inc. ("Pinnacle"); and Northwest Airlines, Inc. ("Northwest") (collectively, "Defendants"). (See Def. Air Serv Corp.'s Mot. for Summ. J., ECF No. 135 ("Air Serv's Mot."); Def. Pinnacle Airlines, Inc.'s Mot. for Summ. J.,

ECF No. 158 ("Pinnacle's Mot."); Def. Northwest Airlines, Inc.'s Mot. for Summ. J., ECF No. 157 ("Northwest's Mot.").) Plaintiff responded in opposition to the motions. (See Pl.'s Resp. in Opp'n to Def. Air Serv. Corp.'s Mot. for Summ. J., ECF No. 174 ("Pl.'s Resp. to Air Serv."); Pl.'s Resp. in Opp'n to Def. Northwest Airlines Inc.'s Mot. for Summ. J., ECF No. 178 ("Pl.'s Resp. to Northwest"); Pl.'s Resp. in Opp'n to Def. Pinnacle Airlines, Inc.'s Mot. for Summ. J., ECF No. 179 ("Pl.'s Resp. to Pinnacle").) Air Serv replied. (See Def. Air Serv Corp.'s Reply to Pl.'s Resp. to Air Serv Corp.'s Mot. for Summ. J., ECF No. 182.) ("Air Serv's Reply")

For the following reasons, Air Serv's motion is GRANTED, Northwest's motion is GRANTED IN PART and DENIED IN PART, and Pinnacle's motion is GRANTED.

## I. Background[1]

Before his fall, Glass had traveled from Michigan to Memphis on an airline ticket purchased for him by Plaintiff, his daughter. (Def. Air Serv. Corp.'s Statement of Undisputed

---

[1] Unless otherwise stated, the facts in this Part are undisputed for purposes of summary judgment. The Defendants filed three separate statements of undisputed facts. (See Def. Air Serv. Corp.'s Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J., ECF No. 136-1 ("Air Serv's Statement"); Statement of Undisputed Material Facts in Supp. of Def. Pinnacle Airlines, Inc.'s Mot. for Summ. J., ECF No. 158-2 ("Pinnacle's Statement"); Statement of Undisputed Material Facts in Supp. of Def. Northwest Airlines Inc.'s Mot. for Summ. J., ECF No. 157-2 ("Northwest's Statement").) Because the statements filed by Pinnacle and Northwest are substantively identical and Plaintiff's separate responses to those statements are substantively identical, the Court refers only to the statement filed by Northwest and Plaintiff's responses to that statement.

Material Facts in Supp. of Mot. for Summ. J., ECF No. 136-1 ¶¶
1-3 ("Air Serv's Statement"); Statement of Undisputed Material
Facts in Supp. of Def. Northwest Airlines Inc.'s Mot. for Summ.
J. ¶ 1, ECF No. 157-2 ("Northwest's Statement").)  When she
booked the ticket for her father's flight with Northwest,
Plaintiff requested wheelchair assistance for him. (Air Serv's
Statement ¶¶ 3-4; Northwest's Statement ¶¶ 2.)  Northwest
provides that service to its passengers for no additional fee.
(Northwest's Statement ¶ 3.)

At the time of the accident, Northwest had contracted with
Air Serv for passenger wheelchair services at the Airport. (Air
Serv's Statement ¶¶ 5-6; Northwest's Statement ¶ 4; see also Ex.
C, ECF No. 157-4.)  Under their contract (the "Northwest-Air
Serv Contract"), a "planned" request was a wheelchair request
made by a passenger before the passenger's arrival at the
Airport. (See Air Serv's Statement ¶ 7.)  When Air Serv
received a planned request, it was required to send a wheelchair
to the requesting passenger's gate within thirty minutes of
"aircraft block time." (Ex. C., at Ex. § 7.1.6.)

The parties dispute how Northwest informed Air Serv of
planned requests.  Northwest states that it sent planned
requests to Air Serv via "telex" printer before passengers'
arrival. (Id. ¶ 8.) Plaintiff disputes this fact to the extent
it implies that telex requests were the only way Northwest

relayed planned requests to Air Serv. (Pl.'s Resps. to Def. Air
Serv Corp.'s Statement of Undisputed Material Facts ¶ 8, ECF No.
174-1.) ("Pl.'s Statement to Air Serv") Plaintiff submits a
deposition from Air Serv dispatcher Toni Bland ("Bland"), in
which she states that, in addition to telex requests, Northwest
sent Air Serv a printed list of planned requests before each
"bank" of flights. (See Bland Dep., 40:23-50:7, ECF No. 174-2.)
That list included the anticipated number of wheelchairs needed
for each flight in the bank, but did not include specific
information about which passengers requested the wheelchairs.
(See id. 47:21-48:2.)

Under the Nothwest-Air Serv Contract, wheelchair requests
not made in advance were called "unplanned" requests. (See Air
Serv's Statement ¶ 10.) To make unplanned requests, Northwest
employees working at the Airport's gates telephoned an Air Serv
dispatcher when an arriving passenger requested a wheelchair.[2]
(See id. ¶ 11.) Under the Nothwest-Air Serv Contract, Air Serv
had to provide a wheelchair within thirty minutes of an
"unplanned" request.[3] (Air Serv's Statement ¶¶ 12-13.)

---

[2] Plaintiff disputes this fact to the extent it implies that only unplanned
requests required a gate agent to telephone the Air Serv dispatcher. (See
Pl.'s Statement to Air Serv ¶ 11.) Plaintiff submits dispatcher Toni Bland's
deposition testimony, in which she states that Air Serv did not send
wheelchairs for arriving passengers until a gate agent had called and
requested them, even if the passengers had made "planned" requests. (Bland
Dep. 20:24-22:22.)
[3] Plaintiff denies this fact "to the extent that [Air Serv] asserts that
Clarence Glass is a party to this contract and bound by its terms." (Pl.'s
Resps. to Def. Air Serv Corp.'s Statement Undisputed Material Facts ¶¶ 12-13,

On the day of Glass' fall, Air Serv did not receive a telex request from Northwest requesting a wheelchair for him. (Air Serv's Statement ¶ 9.) When Glass' flight arrived, Parth Patel ("Patel") was working as Pinnacle's gate agent. (Northwest's Statement ¶ 6.) Before Glass disembarked from the aircraft, Patel called the Air Serv dispatcher to request two wheelchairs for passengers arriving on Glass' flight.[4] (Air Serv's Statement ¶ 14; Northwest's Statement ¶ 7.)

Glass was the first passenger off his Northwest flight, which was operated by Pinnacle. (Air Serv's Statement ¶ 16; Pl.'s Resps. to Def. Northwest Airlines, Inc.'s Statement of Undisputed Material Facts ¶ 8, ECF No. 178-1 ("Pl.'s Statement to Northwest").) Using his walker to exit the aircraft, Glass asked Patel for a wheelchair when he entered the gate area. (Air Serv's Statement ¶¶ 17-18; see also Northwest's Statement ¶ 8.) At that time, Patel called Air Serv a second time and requested a wheelchair for Glass. (Air Serv's Statement ¶ 19; Northwest's Statement ¶¶ 9, 11.) The Air Serv dispatcher told Patel that a wheelchair was in route to the gate, and Patel asked Glass to have a seat in the gate area and wait for the

---

ECF No. 174-1.) ("Pl.'s Statement to Air Serv") Plaintiff does not, however, dispute the terms of the contract between Air Serv and Northwest.

[4] Plaintiff denies this fact "to the extent that [Air Serv] implies that either of the wheelchairs . . . were requested for and/or at the request of Clarence Glass." (Pl.'s Statement to Air Serv ¶ 14; see also Pl.'s Statement to Northwest ¶ 7.) However, Plaintiff does not deny that, when Glass disembarked, Patel had already made an initial call to Air Serv requesting two wheelchairs for passengers on Glass' flight.

wheelchair to arrive. (See Northwest's Statement ¶¶ 12-13; see also Air Serv's Statement ¶ 19.) Rather than take a seat, however, Glass waited at the gate area for several minutes and left. (Air Serv's Statement ¶¶ 20, 22; see also Northwest Statement ¶¶ 14, 16.)

There is some dispute as to the exact amount of time that elapsed before Glass left the gate area. Air Serv states that Glass waited in the gate area for only five minutes before leaving. (Air Serv's Statement ¶ 22.) In response to Air Serv, Plaintiff contends that Glass waited up to ten minutes.[5] (See id.) Plaintiff states that, after asking Patel for a wheelchair when he entered the gate area, Glass waited nearby for several minutes before he approached a customer service counter, where Patel called Air Serv a third time. (See Pl.'s Statement to Air Serv ¶ 22.) Plaintiff relies on Patel's deposition, in which he states that Glass was "in [the] gate area" for five or six minutes and "at customer service" for three to four minutes. (Patel Dep. 34:10-34:15, ECF No. 133.)

Northwest and Pinnacle state that Glass waited in the gate area for only five minutes (Northwest's Statement ¶ 14.) In response, Plaintiff again contends that Glass was in the gate

_____

[5] Plaintiff actually contends that Glass waited between eight and eleven minutes. (See Pl.'s Statement to Air Serv ¶ 22). Because Patel states in his deposition that Glass waited no more than four minutes at customer service and no more than six minutes in the gate area, no reasonable jury could conclude that Glass waited eleven minutes. (See Patel Dep. 34:10-34:15).

area for five to six minutes, not five minutes, relying on Patel's deposition testimony. (See Pl.'s Statement to Northwest ¶ 14; see also Patel Dep. 34:10-34:15.) Northwest also states that, after leaving the gate area, Glass walked to the Pinnacle customer service counter and remained there for three to four minutes, which Plaintiff does not dispute. (Northwest's Statement ¶ 16.) Plaintiff and Northwest agree that, at the customer service counter, Patel called Air Serv a third time and was again told that a wheelchair was on its way. (Northwest Statement ¶¶ 17-18.) Regardless of the specific time Glass waited and whether he waited in the gate area or at the customer service counter, the parties agree that Glass eventually left the area. (Air Serv's Statement ¶ 23; Pl.'s Statement to Air Serv ¶ 23.) They also agree that, as he was leaving, Patel again told him that a wheelchair was on its way. (Air Serv's Statement ¶ 23; Pl.'s Statement to Air Serv ¶ 23.)

After leaving the gate area, Glass fell backwards down an escalator while attempting to ascend it using his walker. (Air Serv's Statement ¶ 27; Northwest's Statement ¶ 22.) A sign on the escalator warned against using "baby buggies and like items" on the escalator, and a public elevator was located nearby.[6]

_____

[6] Plaintiff disputes the fact that an elevator was located nearby "to the extent that [Northwest] implies with any degree of certainty that the elevator was clearly designated" on the date of Glass' accident, but does not dispute that the elevator was located nearby. (See Pl.'s Statement to Northwest ¶ 22.)

(Air Serv's Statement ¶¶ 26-27; see also Northwest's Statement ¶¶ 22-23.) Plaintiff alleges that Glass eventually died from his injuries. (Am. Compl. ¶ 27.)

On April 6, 2009, Plaintiff filed a complaint against Defendants, which she amended on January 28, 2010, following Glass' death. (See Compl., ECF No. 1; Am. Compl.) Air Serv moved for summary judgment on May 19, 2010, and Northwest and Pinnacle moved for summary judgment on June 1, 2010. (See Air Serv.'s Mot; Northwest's Mot.; Pinnacle's Mot.) On June 14, 2010, Plaintiff responded to Air Serv, and on June 28, 2010, she responded to Northwest and Pinnacle. (See Pl.'s Resp. to Air Serv; Pl.'s Resp. to Northwest; Pl.'s Resp. to Pinnacle.) Air Serv replied on June 28, 2010. (See Air Serv's Reply.)

## II. Jurisdiction and Choice of Law

Plaintiff alleges that the Court has diversity jurisdiction. (Am. Compl. ¶ 9); see 28 U.S.C. § 1332(a)(1). Like her late father, Plaintiff is a resident of Michigan. (Id. ¶¶ 1-2.) Defendant Northwest is a Minnesota corporation with its principal place of business in Minnesota. (Id. ¶ 3.) Defendant Pinnacle is a Georgia corporation with its principal place of business in Tennessee. (Id. ¶ 5.) Defendant Air Serv is a Georgia corporation with its principal place of business in Georgia. (Id. ¶ 7.) Complete diversity exists. See 28 U.S.C. § 1332(a)(1). Because Plaintiff seeks $7.3 million in damages,

more than $75,000 is in controversy, and amount-in-controversy requirement is satisfied. See id. Therefore, the Court has subject matter jurisdiction based on diversity of citizenship. See 28 U.S.C § 1332(a)(1).

In a diversity action, state substantive law governs. Erie R.R. Co. v. Tompkins, 304 U .S. 64 (1938). Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). Glass' alleged injury occurred in Tennessee, and all parties assume that Tennessee law applies. None alleges that another state has a more significant relationship to the litigation. Therefore, the Court will apply Tennessee substantive law.

### III. Standard of Review

Under Federal Rule of Civil Procedure 56, the party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondent, having

had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting [her] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor. See id. "Summary judgment is an integral part of the Federal Rules as a whole,

which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." <u>FDIC v. Jeff Miller Stables</u>, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

## IV. Analysis

### A. Air Serv's Motion for Summary Judgment

#### 1. Negligence

To establish a claim for negligence under Tennessee law, a plaintiff must show "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." <u>Bradshaw v. Daniel</u>, 854 S.W.2d 865, 869 (Tenn. 1993) (citing <u>McClenahan v. Cooley</u>, 806 S.W.2d 767, 774 (Tenn. 1991); <u>Lindsey v. Miami Dev. Corp.</u>, 689 S.W.2d 856, 858 (Tenn. 1985)). Air Serv argues that, because Plaintiff has failed to show that it had a duty to Glass, summary judgment must be granted on Plaintiff's negligence claim. (Def. Air Serv Corp.'s Mem. of Law in Support of Mot. for Summ. J. 6, ECF No. 136.) ("Air Serv's Mem.")

Every person has a duty to act as a reasonable person would under the circumstances. <u>See</u> <u>Staples v. CBL & Associates, Inc.</u>, 15 S.W.3d 83, 89 (Tenn. 2000) (citations omitted). That duty is

usually negative, a duty not to do something.  See Biscan v. Brown, 160 S.W.3d 462, 478 (Tenn. 2005).  A person must "use reasonable care to refrain from conduct that will foreseeably cause injury to others."  Id. (quoting Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn. 1997)).

"The general duty of care does not include an affirmative duty to act for the protection of another, however, unless the defendant stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger."  Biscan, 160 S.W.3d at 478 (quoting Turner, 957 S.W.2d at 818) (internal quotation marks omitted).  Those special relationships include relationships between parents and children and between employers and employees.  Id. at 479 (citing Restatement (Second) Torts §§ 314-15 (1964)).  Tennessee courts have imposed affirmative duties outside those special relationships.  See id. (collecting cases).  For example, in the medical context, courts have held that physicians have duties not only to their patients but also to foreseeable third parties, such as their patients' families and "the driving public."  See Bradshaw, 854 S.W.2d at 872; Burroughs v. Magee, 118 S.W.3d 323, 332 (Tenn. 2003).

Plaintiff argues that Air Serv had an affirmative duty to provide a wheelchair for Glass.  (Pl.'s Resp. to Air Serv. 4.) Plaintiff's principal argument for imposing that duty is that

Air Serv had notice of Glass' need for a wheelchair from the list of planned wheelchair requests provided to Air Serv by Northwest before the bank of flights in which Glass' flight arrived (the "Northwest List"). (See id.) Because that notice made Glass' request "planned" rather than "unplanned," Plaintiff argues that Air Serv had a duty to have a wheelchair waiting at Glass' gate when Glass arrived. (See id.)

Whether "a defendant owed or assumed a duty of care to a plaintiff is a question of law." Downs ex rel. Downs v. Bush, 263 S.W.3d 812, 819 (Tenn. 2008) (citing West v. E. Tenn. Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005); Stewart v. State, 33 S.W.3d 785, 793 (Tenn. 2000)). To determine whether a defendant has a duty in a particular case, courts apply a balancing test. Id. at 479. A defendant has "a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." Id. (quoting McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995)). In making that determination, courts consider

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

McCall, 913 S.W.2d at 153 (citing Restatement (Second) of Torts §§ 292-93 (1964)).

If Plaintiff were to show Air Serv had notice of Glass' need for a wheelchair before his arrival, that notice would arguably make his injury foreseeable and weigh in favor of imposing a duty on Air Serv. For example, if the Northwest List showed that three wheelchairs were requested for Glass' flight, the list would arguably show that Air Serv had notice of the need for one wheelchair more than the two requested by Patel before Glass arrived. (See Air Serv's Statement ¶ 14.) If Air Serv had notice of Glass' request from the Northwest List, arguably Air Serv also had a duty to provide a wheelchair at his arrival, even if Air Serv had received only two telex requests for that flight. The fatal flaw in Plaintiff's argument is that she has not introduced the Northwest List. (See Pl.'s Resp. to Air Serv. 4 n.2.)

Plaintiff argues that "it is reasonable to assume that Mr. Glass' wheelchair request was provided to [Air Serv] through the [Northwest] 'planned' passenger list." (Pl.'s Resp. to Air Serv. 5.) Although courts must draw all reasonable inferences in favor of the non-moving party, Matsushita, 475 U.S. at 587, those inferences must be based on "concrete evidence" in the record, Cloverdale, 869 F.2d at 937. Plaintiff has not offered

evidence to support the inference that she asks the Court to draw in her favor. Although Plaintiff notes that the Northwest List "has not yet been produced by any Defendant to this litigation," (Pl.'s Resp. to Air Serv. 4 n. 2), she has not argued that Defendants prevented discovery on the issue or that the time permitted for discovery "was insufficient . . . to procure this information," see Lindsey v. Detroit Entm't, LLC, 484 F.3d 824, 830 n.7 (6th Cir. 2007). Because Plaintiff has not offered evidence to support her argument, she "has not carried [her] burden, nor has [s]he excused [her] failure to carry it." See id. Without the Northwest List, the Court cannot conclude that Air Serv had notice of Glass' wheelchair request before his arrival and cannot impose an affirmative duty based on that notice.

Plaintiff alternatively argues that, even if Air Serv did not have notice of Glass' wheelchair request, because Air Serv had "available wheelchair agents in close proximity . . . to his arrival gate at or about the time he arrived and had received three requests for wheelchair assistance," Air Serv had a duty to provide Glass with a wheelchair before he left the gate area.[7]

---

[7] Plaintiff argues that "there is no reason that [Air Serv] should have failed to provide a wheelchair" for Glass (see Pl.'s Mem. 7), citing Patel's deposition testimony in which he states that a wheelchair never arrived at the gate (see Patel Dep. 36:3-36:8, ECF No. 133). Because whether Air Serv sent a wheelchair to the gate after Glass had left the area is immaterial, the Court construes Plaintiff's Response as arguing that Air Serv had a duty to provide the wheelchair before Glass left the gate area.

(See Pl.'s Resp. to Air Serv. 6-7.)  Although the parties
dispute the exact time Glass spent in the gate area, Patel
states in his deposition that Glass was at customer service for
three or four minutes and in the gate area for five or six
minutes.  (Patel Dep. 34:10-34:15.)  Crediting Plaintiff's
implied argument that the Court should add those numbers, Glass
waited no more than ten minutes before leaving the gate area.
(See id.)

The essence of Plaintiff's argument is that, under
Tennessee law, an airport wheelchair-services provider has a
duty in tort to provide a wheelchair to an arriving passenger
within ten minutes of the passenger's arrival.  Plaintiff has
not directed the Court to any authority for the proposition that
Tennessee courts have imposed such a duty.  Therefore, the Court
must decide whether Tennessee would do so by considering whether
"the foreseeable probability and gravity of harm posed by
defendant's conduct outweigh the burden upon defendant to engage
in alternative conduct that would have prevented the harm."  See
Biscan, 160 S.W.3d at 479.

In applying that balancing test to determine whether a duty
exists, "[t]he foreseeability of the harm is a key factor in the
equation because, in general terms, '[f]oreseeability is the
test of negligence.'"  Downs, 263 S.W.3d at 820 (quoting West,
172 S.W.3d at 552); see Hale v. Ostrow, 166 S.W.3d 713, 716-17

16

(Tenn. 2005); see also Holland v. United States, No. 06-2700-STA-tmp, 2009 U.S. Dist. LEXIS 90445, at *12 (W.D. Tenn. Sept. 30, 2009) ("This factor is so important that if an injury could not have been reasonably foreseen, a duty does not arise even if causation-in-fact has been established.") "A risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party . . . owed a duty is probable." Downs, 263 S.W.3d at 820 (quoting West, 172 S.W.3d at 551) (internal quotation marks omitted).

Although Plaintiff argues that it is "altogether foreseeable that . . . passengers who requested a wheelchair might be injured when they are compelled to walk to their destination without the air of a wheelchair," Glass was not compelled to leave the gate area without a wheelchair. (Pl.'s Mem. 6.) The record before the Court demonstrates that Patel told Glass a wheelchair was on its way, but that Glass ignored Patel's instructions and chose not to wait for the wheelchair to arrive. (See Air Serv's Statement ¶¶ 19-20.) It was not foreseeable that Glass, who ostensibly needed a wheelchair to transport himself around the Airport, would choose to ignore Patel's assurances that his wheelchair was on the way, leave the gate area after no more than ten minutes, attempt to ascend an escalator using his walker, and fall and injure himself.

Because Glass' injury was not foreseeable, Air Serv had no duty to Glass.

Even if Glass' injury were foreseeable, "foreseeability alone does not create a duty." Downs, 263 S.W.3d at 820 (citing McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 904 (Tenn. 1996)). If a risk is foreseeable, courts must consider other factors, including, inter alia, "the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct." See McCall, 913 S.W.2d at 153. Plaintiff has not proposed any particular alternative conduct that would have prevented Glass' injury, other than to imply that Air Serv should have provided a wheelchair before Glass left the gate area. (See Pl.'s Resp. to Air Serv. 8.) Because Plaintiff has not shown that Air Serv received a planned request for Glass, Plaintiff's argument would essentially require Air Serv to have a wheelchair available within ten minutes for any passenger who requested one at arrival.

When proposed alternative conduct would place an "onerous burden" on a defendant, Tennessee courts have concluded that the defendant has no duty to engage in that alternative conduct. See, e.g., Henry v. Bi-Dist. Bd. of Urban Ministry, Inc., 54 S.W.3d 287, 290 (Tenn. Ct. App. 2001). Requiring Air Serv to

provide a wheelchair within ten minutes of a passenger's unplanned request would create a tort duty to provide a wheelchair three times as fast as Air Serv's contractual duty under the Nothwest-Air Serv Contract. (<u>See</u> Air Serv's Statement ¶ 13.) Although Plaintiff correctly notes that Glass was not a party to the Nothwest-Air Serv Contract (Pl.'s Statement to Air Serv ¶ 13), that contract provides some evidence of what is feasible under the circumstances. Because Plaintiff has not shown otherwise, the Court concludes that imposing the tort duty advocated by Plaintiff would place an "onerous burden" on Air Serv and similarly situated defendants. <u>See</u> <u>Henry</u>, 54 S.W.3d at 290. Because impatient passengers could leave the gate areas in less than ten minutes and could always reject wheelchairs no matter when they arrive, the increased burden on Air Serv would not necessarily increase safety. <u>See</u> <u>McCall</u>, 913 S.W.2d at 153.

Plaintiff has not shown that the "foreseeable probability and gravity of harm posed by [Air Serv's] conduct outweigh the burden . . . to engage in alternative conduct that would have prevented the harm." <u>See</u> <u>Biscan</u>, 160 S.W.3d at 479. Tennessee courts would not impose an affirmative duty on Air Serv in this context.[8] <u>See</u> <u>id.</u> Because Air Serv had no duty, Plaintiff's

---

[8] In addition to the foreseeability and alternative-conduct factors, when deciding whether to impose a duty courts consider "the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; [and] the usefulness of the conduct to defendant." <u>See</u> <u>McCall</u> 913 S.W.2d at 153. The potential harm or injury is great when

negligence claim against Air Serv must fail. See Bradshaw, 854
S.W.2d at 870 ("A decision by the court that, upon any version
of the facts, there is no duty must necessarily result in
judgment for the defendant.") (citation omitted). Based on the
foregoing, the Court GRANTS Air Serv's motion for summary
judgment on Plaintiff's negligence claim.

### 2. Negligence Per Se

To recover on the basis of negligence per se, a plaintiff
must establish three elements. Smith v. Owen, 841 S.W.2d 828,
831 (Tenn. Ct. App. 1992); see also Harden v. Danek Med., Inc.,
985 S.W.2d 449, 452 (Tenn. Ct. App. 1998). "First, it must be
shown that the defendant violated a statute or ordinance which
'imposes a duty or prohibits an act for the benefit of a person
or the public.'" Smith, 841 S.W.2d at 831 (quoting Nevill v.
City of Tullahoma, 756 S.W.2d 226, 232-233 (Tenn. 1988)).
"Second, the proof must show that the injured party was within
the class of persons whom the legislative body intended to
benefit and protect by the enactment of that particular statute
or ordinance." Id. (citing Traylor v. Coburn, 597 S.W.2d 319,
322 (Tenn. Ct. App. 1980)). "Finally, the injured party must

---

passengers who otherwise need wheelchairs attempt to move around an airport
without them, as Plaintiff's injury in this case demonstrates. However, Air
Serv attempts to prevent that harm by providing wheelchair services to
passengers through contracts with airlines like Northwest, demonstrating the
social value and usefulness of Air Serv's business. Because these factors
are in equilibrium, they do not weigh in favor of or against imposing the
duty Plaintiff advocates.

show that the negligence was the proximate cause of the injury."
Harden, 985 S.W.2d at 452 (citing Long v. Brookside Manor, 885
S.W.2d 70 (Tenn. Ct. App. 1994)).

Plaintiff alleges that regulations promulgated under the
Air Carrier Access Act of 1986 ("ACAA"), 49 U.S.C. § 41705,
provide a basis for her negligence per se claim against Air
Serv.  (See Am. Compl. ¶ 30.)  Under 14 C.F.R. § 382.39,
"carriers" must "ensure that qualified individuals with a
disability" are provided certain services and equipment,
including "assistance . . . in enplaning or deplaning."  14
C.F.R. § 382.39(a) (2008).  Although that provision was removed
from the Code of Federal Regulations effective May 13, 2009, it
applies to Plaintiff's action.[9]  See 73 Fed. Reg. 27,614, 27,665
(May 13, 2008); see also 14 C.F.R. § 382 (2010).  Air Serv
argues that it does not fall within the scope of the regulation
because it is not a "carrier."  (See Air Serv.'s Mem. 11-12.)

For purposes of the cited regulation, a "carrier" is a
person that "undertakes, directly or indirectly, or by a lease
or any other arrangement, to engage in air transportation."  See
14 C.F.R. § 382.5 (2008); see also 14. C.F.R. §382.3 (2010).
Plaintiff does not address her negligence per se claim in her
Response, and nothing in the record demonstrates that Air Serv

_____

[9] The cited provision was in effect in 2008, when Glass' injury occurred, and
in April 2009, when Plaintiff filed suit.  See 14 C.F.R. § 382.39 (2009); 14
C.F.R. § 382.39 (2008).

is a person that "engage[s] in air transportation." See 14
C.F.R. § 382.5 (2008). Air Serv is not a "carrier" within the
meaning of 14 C.F.R. § 382.5 (2008), and 14 C.F.R. § 382.39 does
not apply to Air Serv. Because Plaintiff has not shown that Air
Serv violated any other statute or ordinance, Plaintiff has
failed to establish the first element of her negligence per se
claim. See Smith, 841 S.W.2d at 831. Therefore, the Court
GRANTS Air Serv's motion for summary judgment on that claim.

### 3. Breach of Contract

To be enforceable under Tennessee law, a contract "must
result from a meeting of the minds of the parties in mutual
assent to the terms, must be based upon a sufficient
consideration, free from fraud or undue influence, not against
public policy and sufficiently definite to be enforced." Jane
Doe, et al. v. HCA Health Servs. of Tenn., Inc., d/b/a HCA
Donelson Hospital, 46 S.W.3d 191, 196 (Tenn. 2001). Air Serv
argues that Plaintiff has failed to establish the existence of
an enforceable contract between Glass and Air Serv because she
has not show the required meeting of the minds. (Pl.'s Mem. 12-
14.)

Plaintiff does not address her breach of contract claim in
her Response (see Pl.'s Resp. to Air Serv.), and nothing in the
record establishes that she or Glass was a party to or third-
party beneficiary of any contract with Air Serv. Plaintiff

22

admits that Glass was not a party to the contract between Air Serv and Northwest. (See Pl.'s Statement to Air Serv ¶ 13; Pl.'s Resp. to Air Serv. 8.) The uncontroverted record before the Court demonstrates that neither Plaintiff nor Glass had any communication with Air Serv before Glass' fall. (Air Serv's Statement ¶ 29; see also Glass Dep. 169:14-170:18, ECF No. 136-7.) Because there was no transaction between Plaintiff or Glass and Air Serv, they did not engage in the meeting of the minds necessary to form a contract in Tennessee. See HCA Health Servs., 46 S.W.3d at 196. Therefore, the Court GRANTS Air Serv's motion for summary judgment on Plaintiff's breach of contract claim.

### B. Northwest's Motion for Summary Judgment

#### 1. Negligence

To establish a claim for negligence, a plaintiff must prove, inter alia, that the defendant owed the plaintiff a duty of care. Bradshaw, 854 S.W.2d at 869. Northwest argues that Plaintiff has failed to show that it had a duty to Glass. (Mem. of Law in Supp. of Def. Northwest Airlines Inc.'s Mot. for Summ. J. 9-10, ECF No. 157-1.) Plaintiff argues that Northwest had a duty to provide Glass with a wheelchair because she requested a wheelchair for Glass when she purchased his ticket. (See Pl.'s Resp. to Northwest 8.)

Tennessee courts distinguish between duties in tort and duties in contract. See, e.g., Chase Manhattan Bank, N.A. v. CVE, Inc., 206 F. Supp. 2d 900, 906 (M.D. Tenn. 2002). Although a defendant's act may give rise to an action both in tort and contract, to sound in tort, the "act constituting a contractual breach [must] also constitute[] a breach of a common law duty independent of the contract." Id. (quoting Green v. Moore, No. M2000-03035-COA-R3-CV, 2001 WL 1660828, at *3 (Tenn. Ct. App. Dec. 28, 2001)). Based on these principles, regardless of whether Northwest had a contractual duty to provide Glass with a wheelchair, to bring a negligence claim, Plaintiff must show that Northwest had an independent tort duty to do so. See id. To establish a tort duty in these circumstances, Plaintiff must show that, under Tennessee law, an airline carrier has an affirmative duty to provide a wheelchair to any passenger who requests one within ten minutes of the passenger's arrival.

For the same reasons Plaintiff failed to show that Air Serv had a duty, she has failed to show that Northwest had any duty in tort to provide a wheelchair to Glass. See supra Section VI.A.I. Plaintiff has not shown that the "foreseeable probability and gravity of harm posed by [Northwest's] conduct outweigh the burden . . . to engage in alternative conduct that would have prevented the harm." See Biscan, 160 S.W.3d at 479. It was not any more foreseeable to Northwest than it was to Air

24

Serv that Glass, who ostensibly needed a wheelchair, would leave the gate area after no more than ten minutes, attempt to use an escalator using his walker, and fall and injure himself. Even if Glass' injury were foreseeable, imposing a duty to provide a wheelchair to any passenger within ten minutes of his arrival would impose an even more onerous burden on an airline like Northwest than it would on Air Serv, a company whose primary business is providing passenger wheelchair services. See Henry, 54 S.W.3d at 290.

Because Northwest had no duty in tort to provide a wheelchair to Glass, Plaintiff's negligence claim against Northwest must fail. See Bradshaw, 854 S.W.2d at 870. Therefore, the Court GRANTS Northwest's motion for summary judgment on Plaintiff's negligence claim.

## 2. Negligence Per Se

To recover under a theory of negligence per se, a plaintiff must first show, inter alia, that the defendant violated a statute or regulation that imposes a duty to act for the benefit of a person or the public. See Harden, 985 S.W.2d at 452; Smith, 841 S.W.2d at 831. Plaintiff relies on the same regulation to establish her negligence per se claim against Northwest, 14 C.F.R. § 382.39. (See Pl.'s Resp. 11-13.) Northwest does not argue that it is not a "carrier" within the meaning of 14 C.F.R. § 382.39. See 14 C.F.R. § 382.39 (2008)

25

(defining "carrier" for purposes of 14 C.F.R. § 382.39).
Instead, Northwest argues that its failure to provide a
wheelchair to Glass within ten minutes of his arrival at the
gate does not constitute a violation of any duty imposed by that
regulation.  (Northwest's Mem. 14-15.)

The ACAA is not a strict liability statute.  Adiutori v.
Sky Harbor Int'l Airport, 880 F. Supp. 696, 701 (D. Ariz. 1995),
aff'd 103 F.3d 137 (9th Cir. 1996).  Although a carrier has a
duty to provide assistance to a qualified individual, "a minimal
delay in providing the requested assistance does not constitute
a violation of the act."  Glatfelter v. Delta Air Lines, Inc.,
558 S.E.2d 793, 796 (Ga. Ct. App. 2002) (citing Adiutori, 880 F.
Supp. at 701).  A plaintiff may not create a genuine issue of
material fact simply by showing a delay.  See id. ("The ACAA and
the regulations applicable here do not specify how quickly
requested assistance must be provided, but this does not mean
that evidence of a delay of any length is sufficient to raise a
jury issue.")

In Glatfelter, a well reasoned and persuasive decision from
Georgia, a husband and wife requested a wheelchair for the
husband when their flight landed at the Atlanta airport.  Id.
When one could not be procured immediately because of crowded
conditions, they left the gate area after waiting between
fifteen and twenty minutes.  Id.  After the husband suffered an

injury while attempting to descend an escalator, the couple sued their airline carrier, Delta Air Lines, Inc. Id. The Georgia Court of Appeals concluded that, "as a matter of law . . . under these circumstances a delay of 15-to-20 minutes did not constitute a violation of the ACAA." Id. (interpreting ACCA regulation codified at 14 C.F.R. § 389.39(a)).

Glass waited only ten minutes for a wheelchair to arrive before he left the gate area, at least five minutes less than the plaintiffs in Glatfelter. Compare id., with (Patel Dep. 34:10-34:15). Because the ACAA and its implementing regulations are not intended to impose strict liability, Adiutori, 880 F. Supp. at 701, that minimal delay does not create a genuine issue of material fact about whether Northwest breached its duty under 14 C.F.R. § 389.39(a), see Glatfelter, 558 S.E.2d at 796. As a matter of law, a ten-minute delay under these circumstances does not constitute a violation of the applicable ACAA regulation in this case.

Because Plaintiff has not shown that Northwest violated a statute or regulation intended to protect a person or the public, Plaintiff has not established the first element of her negligence per se claim. See Harden, 985 S.W.2d at 452. Therefore, the Court GRANTS Northwest's motion for summary judgment on Plaintiff's negligence per se claim.

### 3. Breach of Contract

To be enforceable under Tennessee law, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." HCA Health Servs., 46 S.W.3d at 196. Northwest does not argue that Plaintiff has failed to show that, when she purchased a Northwest ticket for Glass, she and Northwest formed a contract under which Northwest was required to provide wheelchair assistance to Glass. Instead, Northwest argues that it cannot be held liable for breach of contract because it delegated its contractual duty to Glass by contracting with Air Serv to provide passenger wheelchair services at the Airport. (Northwest's Mem. 4.) Because Air Serv was an independent contractor, Northwest argues that it cannot be held liable for Air Serv's failure to provide Glass a wheelchair before Glass left the gate area. (See id.)

Northwest cites various cases in support of its argument. (See id.) However, those cases stand for the general principle that an employer is generally not liable in tort for the negligence of its independent contractor. See e.g., Waggoner Motors, Inc. v. Waverly Church of Christ, 159 S.W.3d 42, 53 (Tenn. Ct. App. 2004) ("Tennessee, like many jurisdictions, recognizes the principle that the employer of an independent

contractor is not automatically liable for physical harm caused to another by the contractor's negligence."); <u>Carr v. Carr</u>, 726 S.W.2d 932, 933 (Tenn. Ct. App. 1986) ("The general rule is that the employer is not ordinarily liable for the negligence of an independent contractor.") (citations omitted). Those cases do not stand for the proposition that a party to a contract may avoid liability to its contractual counterparty by delegating its contractual duties to an independent contractor or other third party without the permission of the counterparty.

"The hornbook principle of contract law is that the delegation of the performance of a contract does not, unless the obligee agrees otherwise, discharge the liability of the delegating obligor to the obligee for breach of contract." <u>Federal Ins. Co. v. Winters</u>, No. E2009-02065-COA-R3-CV, 2010 WL 4065609, at *4 (Tenn. Ct. App. 2010) (citations omitted). The Nothwest-Air Serv Contract states that Air Serv "shall provide wheelchair passenger services" according to certain standards, but the contract does not state or imply that Air Serv agrees to assume Northwest's contractual liability. (<u>See</u> Ex. C, at Ex. A-1 § 1.1.)

The language of the Nothwest-Air Serv Contract demonstrates that Northwest retained a duty to relay passengers' wheelchair requests to Air Serv. (Ex. C, at Ex. A-1 § 7.1.1 (defining "planned" service requests). Northwest failed to relay Glass'

request to Air Serv via telex, the usual procedure. (See Air Serv.'s Statement ¶¶ 6-9.) When combined with the contractual language, Northwest's failure to relay Glass' wheelchair request creates a genuine issue of material fact about whether Northwest breached its contractual duty to Glass. See Forrest Constr. Co., LLC v. Laughlin, No. M2008-01566-COA-R3-CV, 2009 Tenn. App. LEXIS 829, at *29 (Tenn. Ct. App. Dec. 9, 2009) ("Whether a party has fulfilled its obligations under a contract or is in breach of the contract is a question of fact.") (citing Carter v. Krueger, 916 S.W.2d 932, 934-35 (Tenn. Ct. App. 1995)). Because there is a genuine issue of material fact about Plaintiff's breach of contract claim, Northwest's motion for summary judgment on that claim is DENIED.

### C. Pinnacle's Motion for Summary Judgment

#### 1. Negligence

To establish a claim for negligence, a plaintiff must prove, inter alia, that the defendant owed the plaintiff a duty of care. Bradshaw, 854 S.W.2d at 869. Pinnacle argues that it had no duty to Glass. (Mem. of Law in Supp. of Def. Pinnacle Airlines Inc.'s Mot. for Summ. J. 8, ECF No. 158-1.) Plaintiff argues that, because she has established that Pinnacle was bound by her contract with Northwest, she has also established that Pinnacle had a duty to Glass. (Pl.'s Resp. to Pinnacle 5.)

As noted, Tennessee courts distinguish duties in tort from duties in contract. Chase Manhattan Bank, 206 F. Supp. 2d at 906. Regardless of any contractual duty that Pinnacle may have had to Glass, Plaintiff must show that Pinnacle had an independent duty in tort to provide Glass with a wheelchair. See id. Plaintiff does not argue that Pinnacle had any such duty. (See Pl.'s Resp. to Pinnacle 5 (stating that, because Pinnacle "was bound by Plaintiff's contract" with Northwest, Pinnacle had a duty and then "assum[ing] arguendo that [Pinnacle] did owe Plaintiff a duty").)

Even if Plaintiff were to argue that Pinnacle had an independent duty in tort to provide Glass a wheelchair, that argument would fail for the same reasons that it failed to support imposing a tort duty on Air Serv or Northwest. See supra Sections IV.A.I, IV.B.I. Plaintiff has not shown that the "foreseeable probability and gravity of harm posed by [Pinnacle's] conduct outweigh the burden . . . to engage in alternative conduct that would have prevented the harm." See Biscan, 160 S.W.3d at 479. It was not any more foreseeable to Pinnacle than it was to Air Serv or Northwest that Glass, who ostensibly needed a wheelchair, would ignore the assurances of Patel, leave the gate area after no more than ten minutes, and injure himself while attempting to ascend an escalator. Even if Glass' injury were foreseeable, imposing a duty to provide a

wheelchair to any passenger within ten minutes of his arrival would be as onerous to Pinnacle as it would to Northwest and Air Serv. See Henry, 54 S.W.3d at 290.

Because Pinnacle had no duty in tort to provide a wheelchair to Glass, Plaintiff's negligence claim against Pinnacle must fail. See Bradshaw, 854 S.W.2d at 870. Therefore, the Court GRANTS Pinnacle's motion for summary judgment on Plaintiff's negligence claim.

## 2. Negligence Per Se

To recover under a theory of negligence per se, a plaintiff must first show the defendant violated a statute or regulation that imposes a duty to act for the benefit of a person or the public. See Harden, 985 S.W.2d at 452; Smith, 841 S.W.2d at 831. To establish her negligence per se claim against Pinnacle, Plaintiff relies on 14 C.F.R. § 382.39. (See Pl.'s Resp. 11-13.) Like Northwest, Pinnacle argues that its failure to provide a wheelchair to Glass within ten minutes of his arrival at the gate does not constitute a violation of any duty imposed by regulation. (Pinnacle's Mem. 14-16.)

For the same reasons Plaintiff failed to show that Northwest violated 14 C.F.R § 382.39, she has failed to show that Pinnacle violated that regulation. In comparison with the plaintiffs in Glatfelter, who left the gate area after waiting no more than twenty minutes, Glass left the gate area after

32

waiting only ten minutes for a wheelchair. Compare id., with (Patel Dep. 34:10-34:15). Because the ACAA and its implementing regulations are not intended to impose strict liability, Adiutori, 880 F. Supp. at 701, that minimal delay does not create a genuine issue of material fact about whether Pinnacle breached its duty under 14 C.F.R § 382.39, see Glatfelter, 558 S.E.2d at 796. As a matter of law, a ten-minute delay under these circumstances does not constitute a violation of the applicable ACAA regulation in this case.

Because Plaintiff has not shown that Pinnacle violated a statute or regulation intended to protect a person or the public, Plaintiff has not established the first element of her negligence per se claim. See Harden, 985 S.W.2d at 452. Therefore, the Court GRANTS Pinnacle's motion for summary judgment on Plaintiff's negligence per se claim.

### 3. Breach of Contract

To be enforceable under Tennessee law, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." HCA Health Servs., 46 S.W.3d at 196. Pinnacle argues that it did not enter into an enforceable contract with Plaintiff because there was no meeting of the minds and no consideration.

(Northwest's Mem. 4-6.)  Plaintiff does not contest Pinnacle's contention that neither she nor Glass communicated with Pinnacle before Glass arrived in Memphis and that she never gave consideration to Pinnacle directly.  Instead, she argues that Pinnacle acted as Northwest's agent and was therefore bound by Northwest's contract with Glass.  (Pl.'s Resp. to Pinnacle 3-5.)

"The existence of an agency relationship is a question of fact under the circumstances of the particular case, and is determined by examining the agreement between the parties or the parties' actions."  Boren ex rel. Boren v. Weeks, 251 S.W.3d 426, 432 (Tenn. 2008) (quoting  White v. Revco Disc. Drug Ctrs., Inc., 33 S.W.3d 713, 723 (Tenn. 2000)) (internal quotation marks omitted).  Although Plaintiff relies on various facts to show that Pinnacle acted as Northwest's agent (see Pl.'s Resp. to Pinnacle 4), Plaintiff emphasizes that Pinnacle acted in accordance with the Nothwest-Air Serv Contract when providing wheelchair services to passengers on the Northwest flights it operated.  (See Northwest Statement ¶ 25.)  Based on that fact, Plaintiff argues that it "is simply not logical for [Pinnacle] to comply with the terms of the [Northwest-Air Serv Contract] unless [Pinnacle] was contractually obligated as a result of Plaintiff's purchase of the airline ticket and wheelchair request made directly to [Northwest]."  (Pl.'s Resp. to Pinnacle 4.)

Plaintiff has shown that Pinnacle had an agency or other contractual relationship with Northwest and that, when passengers requested wheelchairs from Pinnacle, they handled those requests according to the procedures in the Nothwest-Air Serv Contract. Those facts alone, however, do not necessarily show that Pinnacle had a contractual duty to Plaintiff or to Glass.

Within the scope of its authority, an agent may contractually bind a principal. Johnson v. LeBonheur Children's Med. Cntr., 74 S.W.3d 388, 343 (Tenn. 2002) (citing White, 33 S.W.3d at 724). However, the agent is not necessarily bound by all of its principal's contractual obligations to third parties. When an agency relationship exists, the principal-agent agreement determines the scope of their relationship. See Roberts v. Iddins, 797 S.W.2d 615, 617 (Tenn. Ct. App. 1990) (citations omitted); see also White, 33 S.W.3d at 723. Whether such a relationship exists and the scope of the relationship are generally questions of fact. See Willis v. Settle, 162 S.W.3d 169, 183 (Tenn. Ct.App. 2004) (citations omitted). In this case, however, even assuming that Pinnacle had an agency relationship with Northwest, nothing in the record demonstrates that, as part of that relationship, Pinnacle assumed Northwest's contractual duties to Glass.

Because Plaintiff has not shown that Pinnacle assumed Northwest's contractual duties to Glass or that Pinnacle otherwise had a contractual duty to him or to Plaintiff, her breach of contract claim must fail. Therefore, the Court GRANTS Pinnacle's motion for summary judgment on that claim.

## V. Conclusion

For the foregoing reasons, the Court GRANTS Air Serv's motion for summary judgment on Plaintiff's claims for negligence, negligence per se, and breach of contract. The Court GRANTS Northwest's motion for summary judgment on Plaintiff's negligence and negligence per se claims and DENIES Northwest's motion for summary judgment on Plaintiff's breach of contract claim. The Court GRANTS Pinnacle's motion for summary judgment on Plaintiff's claims for negligence, negligence per se, and breach of contract.

So ordered this 4th day of January, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE