IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| BRENDA GLASS, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-2206 |
| | ) | |
| NORTHWEST AIRLINES, INC.; DELTA | ) | |
| AIRLINES, INC.; PINNACLE | ) | |
| AIRLINES, INC.; PINNACLE AIRLINES | ) | |
| CORP.; AIR SERV CORP.; and | ) | |
| MEMPHIS-SHELBY COUNTY AIRPORT | ) | |
| AUTHORITY, | ) | |
| | ) | |
|    Defendants. | ) | |

## ORDER ON MOTIONS

Plaintiff Brenda Glass ("Plaintiff") originally brought claims for negligence, negligence per se, and breach of contract against Defendants Northwest Airlines, Inc. ("Northwest"), Pinnacle Airlines, Inc. ("Pinnacle"), and Air Serv Corporation ("Air Serv" and, collectively, "Defendants"). (See Am. Compl. ¶¶ 3-8, 23-32, ECF No. 104.) Defendants filed separately for summary judgment. (See Def. Air Serv Corp.'s Mot. for Summ. J., ECF No. 135; Def. Northwest Airlines, Inc.'s Mot. for Summ. J., ECF No. 157; Def. Pinnacle Airlines, Inc.'s Mot. for Summ. J., ECF No. 158.)

In its January 4, 2011 Order on Defendants' Motions for Summary Judgment ("Order"), the Court granted Northwest's motion

for summary judgment on Plaintiff's claims for negligence and negligence per se, but denied that motion on her breach of contract claim. (See Order on Defs.' Mots. for Summ. J. 36, ECF No. 216.) The Court granted Pinnacle's and Air Serv's motions for summary judgment on all claims against them. (Id.)

Before the Court are two motions seeking revision of the Court's Order. (See Def. Northwest Airlines, Inc.'s Mot. to Alter or Amend J., ECF No. 219; Pl.'s Mot. to Reconsider, ECF No. 221.) The first is Northwest's January 21, 2011 motion to alter or amend ("Northwest's Motion"). (See Def. Northwest Airlines, Inc.'s Mot. to Alter or Amend J.) Plaintiff responded in opposition on February 2, 2011. (See Pl.'s Resp. in Opp'n to Northwest Airlines, Inc.'s Mot. to Alter or Amend J., ECF No. 222.) ("Pl.'s Resp.") The second is Plaintiff's January 28, 2011 motion to reconsider ("Plaintiff's Motion"). (See Pl.'s Mot. to Reconsider, ECF No. 221.) Northwest, Pinnacle, and Air Serv separately responded in opposition on February 11, 2011. (See Def. Northwest Airlines, Inc.'s Resp. in Opp'n to Pl.'s Mot. to Reconsider, ECF No. 225 ("Northwest's Resp."); Def. Air Serv Corporation's Resp. in Opp'n to Pl.'s Mot. to Reconsider, ECF No. 226 ("Air Serv's Resp."); Def. Pinnacle Airlines, Inc.'s Resp. in Opp'n to Pl.'s Mot. to Reconsider, ECF No. 227 ("Pinnacle's Resp.").) For the following reasons, the Court GRANTS Northwest's Motion and DENIES Plaintiff's Motion.

## I.    Background

Plaintiff's claims arise from an incident at Memphis International Airport (the "Airport") on September 9, 2008, in which her father, Clarence Glass ("Glass"), fell down an escalator, suffering serious injuries that allegedly caused his death.  (See Am. Compl. ¶¶ 10-25.)  The Court summarized the relevant facts, and the parties' disagreements about those facts, in its January 4, 2011 Order.  (See Order 2-8.)  The Court stated:

> Before his fall, Glass had traveled from Michigan to Memphis on an airline ticket purchased for him by Plaintiff, his daughter.  When she booked the ticket for her father's flight with Northwest, Plaintiff requested wheelchair assistance for him.  Northwest provides that service to its passengers for no additional fee.
>
> At the time of the accident, Northwest had contracted with Air Serv for passenger wheelchair services at the Airport.  Under their contract (the "Northwest-Air Serv Contract"), a "planned" request was a wheelchair request made by a passenger before the passenger's arrival at the Airport.  When Air Serv received a planned request, it was required to send a wheelchair to the requesting passenger's gate within thirty minutes of "aircraft block time."
>
> The parties dispute how Northwest informed Air Serv of planned requests.  Northwest states that it sent planned requests to Air Serv via "telex" printer before passengers' arrival.  Plaintiff disputes this fact to the extent it implies that telex requests were the only way Northwest relayed planned requests to Air Serv.  Plaintiff submits a deposition from Air Serv dispatcher Toni Bland ("Bland"), in which she states that, in addition to telex requests, Northwest sent Air Serv a printed list of planned requests before each "bank" of flights.  That list included the anticipated number of wheelchairs needed for each flight in the bank, but did not include specific

information about which passengers requested the wheelchairs.

Under the Nothwest-Air Serv Contract, wheelchair requests not made in advance were called "unplanned" requests. To make unplanned requests, Northwest employees working at the Airport's gates telephoned an Air Serv dispatcher when an arriving passenger requested a wheelchair. Under the Nothwest-Air Serv Contract, Air Serv had to provide a wheelchair within thirty minutes of an "unplanned" request.

On the day of Glass' fall, Air Serv did not receive a telex request from Northwest requesting a wheelchair for him. When Glass' flight arrived, Parth Patel ("Patel") was working as Pinnacle's gate agent. Before Glass disembarked from the aircraft, Patel called the Air Serv dispatcher to request two wheelchairs for passengers arriving on Glass' flight.

Glass was the first passenger off his Northwest flight, which was operated by Pinnacle. Using his walker to exit the aircraft, Glass asked Patel for a wheelchair when he entered the gate area. At that time, Patel called Air Serv a second time and requested a wheelchair for Glass. The Air Serv dispatcher told Patel that a wheelchair was in route to the gate, and Patel asked Glass to have a seat in the gate area and wait for the wheelchair to arrive. Rather than take a seat, however, Glass waited at the gate area for several minutes and left.

There is some dispute as to the exact amount of time that elapsed before Glass left the gate area. Air Serv states that Glass waited in the gate area for only five minutes before leaving. In response to Air Serv, Plaintiff contends that Glass waited up to ten minutes. Plaintiff states that, after asking Patel for a wheelchair when he entered the gate area, Glass waited nearby for several minutes before he approached a customer service counter, where Patel called Air Serv a third time. Plaintiff relies on Patel's deposition, in which he states that Glass was "in [the] gate area" for five or six minutes and "at customer service" for three to four minutes.

Northwest and Pinnacle state that Glass waited in the gate area for only five minutes. In response, Plaintiff again contends that Glass was in the gate area for five to six minutes, not five minutes, relying on Patel's deposition testimony. Northwest also states that, after leaving the gate area, Glass

walked to the Pinnacle customer service counter and remained there for three to four minutes, which Plaintiff does not dispute.  Plaintiff and Northwest agree that, at the customer service counter, Patel called Air Serv a third time and was again told that a wheelchair was on its way.  Regardless of the specific time Glass waited and whether he waited in the gate area or at the customer service counter, the parties agree that Glass eventually left the area.  They also agree that, as he was leaving, Patel again told him that a wheelchair was on its way.

After leaving the gate area, Glass fell backwards down an escalator while attempting to ascend it using his walker.  A sign on the escalator warned against using "baby buggies and like items" on the escalator, and a public elevator was located nearby.  Plaintiff alleges that Glass eventually died from his injuries.

(Id. 2-8 (internal citations and footnotes omitted).)

## II.  Standard of Review[1]

Under Federal Rule of Civil Procedure 54(b), a court may revise any order before it issues an entry of judgment adjudicating all of the claims and all of the parties' rights

---

[1] Northwest styles its motion a "Motion to Alter or Amend Judgment" and relies on Federal Rule of Civil Procedure 59(e) and Local Rule 7.2.  (See Def. Northwest Airlines, Inc.'s Mot. to Alter or Amend J.)  Plaintiff styles her motion a "Motion to Reconsider" and relies on Local Rule 7.2.  (See Pl.'s Mot. to Reconsider.)  Rule 59(e) permits motions to alter or amend a judgment within twenty-eight (28) days of the judgment's entry.  Fed. R. Civ. P. 59(e).  However, Rule 54(a) defines a "judgment" as "a decree and any order from which an appeal lies."  Id. 54(a).  Although this Court considered motions for summary judgment in its Order, it did not issue a judgment that would permit an appeal because it granted those motions in part and denied them in part.  See Byrne v. Wood, Herron & Evans, LLP, No. 2: 08-102-DCR, 2009 WL 5064451, at *1 (E.D. Ky., Dec. 16, 2009) (describing a motion granting partial summary judgment as interlocutory); (Order).  Therefore, Rule 59(e) is inapplicable.  The version of Local Rule 7.2 that was in effect when Plaintiff filed her motion addresses civil motions generally, but does not address motions to reconsider.  See W.D. Tenn. Civ. R. 7.2 (Feb. 2011).  Therefore, Local Rule 7.2 is inapplicable.  In this circuit, the general practice has been to bring motions to reconsider or revise interlocutory orders under Rule 54(b), and this district has expressly authorized that practice in its recently updated local rules.  See Fed. R. Civ. P. 54(b); W.D. Tenn. Civ. R. 7.3(a); Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004).  Therefore, the Court construes Northwest's Motion and Plaintiff's Motion as brought under Rule 54(b).

and liabilities.  Fed. R. Civ. P. 54(b); <u>see</u> <u>also</u> <u>Rodriguez v.</u>
<u>Tenn. Laborers Health & Welfare Fund</u>, 89 F. App'x 949, 959 (6th
Cir. 2004) ("District courts have authority both under common
law and Rule 54(b) to reconsider interlocutory orders and to
reopen any part of a case before entry of final judgment.")
(citation omitted).  "Rule 54(b), however, does not expressly
provide for . . . motions by parties and does not prescribe any
standards or bases for revisions of prior decisions." <u>Lumpkin</u>
<u>v. Farmers Grp., Inc.</u>, No. 05-2868 Ma/V, 2007 WL 6996777, at *3
(W.D. Tenn. July 6, 2007) (citation and internal quotation marks
omitted).  Courts generally revise interlocutory orders only
"whe[re] there is (1) an intervening change of controlling law;
2) new evidence available; or (3) a need to correct a clear
error or prevent manifest injustice."[2] <u>Louisville/Jefferson</u>
<u>Cnty. Metro Gov't v. Hotels.com, L.P.</u>, 590 F.3d 381, 389 (6th
Cir. 2009) (quoting <u>Rodriguez</u>, 89 F. App'x at 959).  Motions to
revise "may not be used to relitigate old matters." <u>In re</u>
<u>Regions Morgan Keegan Secs., Derivative, and ERISA Litig.</u>, Nos.
07-2784, MDL 2009, 2010 WL 5464792, at *1 (W.D. Tenn. Dec. 30,
2010) (citation and internal quotation marks omitted).

**III. Northwest's Motion**

---

[2] The recently updated Local Rules of this district provide a similar standard
for motions under Rule 54(b) in Local Rule 7.3. <u>See</u> W.D. Tenn. Civ. R.
7.3(b).  However, Local Rule 7.3 was not amended until March 1, 2011. <u>See</u>
<u>id.</u>  Therefore, it is inapplicable.

Plaintiff seeks damages arising from Glass' death, including the full pecuniary value of his life, his physical and emotional pain and suffering, his medical expenses, his loss of enjoyment of life, and his funeral expenses. (See Compl. ¶ 32.) Northwest argues that Plaintiff has failed to show that the damages she seeks are recoverable in an action for breach of contract and that, in denying its motion for summary judgment on her breach of contract claim without addressing damages, the Court committed a clear error of law. (See Def. Northwest Airlines, Inc.'s Mem. of Law in Supp. of its Mot. to Alter or Amend J. 8-12, ECF No. 219-1.) ("Northwest's Mem.") Northwest argues that Plaintiff's claim must fail because the damages she alleges "cannot be deemed to have been within the contemplation of the parties at the time Plaintiff purchased Mr. Glass' ticket." (Id. at 11-12.)

Plaintiff does not respond to Northwest's argument on its merits, but argues that, because Northwest's argument was not raised in its motion for summary judgment, it cannot be raised in its motion to alter or amend. (See Pl.'s Resp. 6-8.) She relies on a First Circuit Court of Appeals decision stating, "A Rule 59(e) motion is not properly used to raise arguments which could, and should, have been made before judgment issued." See Yeomalakis v. FDIC, 562 F.3d 56, 61 (1st Cir. 2009) (citation and internal quotation marks omitted); (Pl.'s Resp. 8).

Like the First Circuit, the Sixth Circuit has held that, "under Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 395 (6th Cir. 2007) (citation omitted). Rule 59(e) governs motions made after judgment has issued, not motions to revise interlocutory orders. Compare Fed. R. Civ. P. 59(e), with Fed. R. Civ. P. 54(b). To be meritorious, "a motion under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." Roger Miller Music, 477 F.3d at 395 (citation and internal quotation marks omitted). When considering motions under Rule 54(b) to revise interlocutory orders, district courts have "significant discretion." Rodriguez, 89 F. App'x at 959 n.6. Courts may "afford such relief from [interlocutory orders] as justice requires." Id. at 959 (citation omitted) (alteration in original).

Because judgment has not issued, the Court construes Northwest's motion as one invoking Rule 54(b) and the Court's "inherent authority" to revise its interlocutory orders. See In re Regions Morgan Keegan, 2010 WL 5464792, at *1. Therefore, the Court applies the standards governing motions under Rule 54(b), not those governing motions under Rule 59(e). Although the Court is not required to consider Northwest's argument, it

exercises its inherent authority to do so. Plaintiff's argument that Northwest may not raise the argument that Plaintiff has failed to establish an element of its breach of contract claim because it failed to do so in its motion for summary judgment is not well-taken.

To establish a claim for breach of contract under Tennessee law, a plaintiff must show: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages caused by the breach. C&W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (citing ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)); see Markow v. Pollock, No. M2008-01720-COA-R3-CV, 2009 WL 4980264, at *4 (Tenn. Ct. App. Dec. 22, 2009) (citation omitted); Wooten Tractor Co., Inc. v. Arcon of Tenn., L.L.C., No. W2008-01650-COA-R3-CV, 2009 WL 1492227, at *5 (Tenn. Ct. App. May 28, 2009) (citation omitted). A showing of damages "is an essential element to the plaintiff's cause of action." Apollo Hair Sys. of Nashville v. First Lady Int'l Corp., No. M2003-02322-COA-R3-CV, 2005 WL 735032, at *4 (Tenn. Ct. App. Mar. 29, 2005) (citation omitted); see Ervin v. Nashville Peace & Justice Ctr., 673 F. Supp. 2d 592, 612 (M.D. Tenn. 2009) ("Plaintiff's state law breach of contract claim warrants dismissal because he cannot show damages from the purported breach.").

A plaintiff asserting a claim for breach of contract may recover damages that "arise naturally" from the breach and that "may reasonably be supposed to have been within the contemplation of the parties as a probable result thereof, or such as were reasonably foreseeable and within contemplation of the parties when they entered into the contract." Heim v. Town of Camden, No. 02A01-9109CH00204, 1992 WL 1391, at *4 (Tenn. Ct. App. Jan. 8, 1992) (citing Baker v. Riverside Church of God, 453 S.W.2d 801, 809-10 (Tenn. Ct. App. 1970)); cf. Ervin, 673 F. Supp. 2d at 612 ("Damages for a breach of contract represent payment for actual losses caused by the breach of contract."). "[A] party who [fails] to fulfill a contract cannot be held liable for remote, contingent and uncertain consequences, or for speculative or possible results which may have ensued from his breach." Poynter v. Gen. Motors Corp., No. 3:06-CV-226, 2007 WL 3341923, at *3 (E.D. Tenn. Nov. 9, 2007) (citation omitted); see Hannan v. Alltel Publ'g Co., 270 S.W.3d 1, 10 (Tenn. 2008) ("The existence of damages cannot be uncertain, speculative, or remote." (citation omitted)); Baker, 453 S.W.2d at 809-10. The Tennessee Court of Appeals has explained:

> A rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service would be a serious hindrance to the operations of commerce and to the transaction of the common business life. The effect would often be to impose a liability wholly

> disproportionate to the nature of the act or service
> which a party had bound himself to perform and to the
> compensation paid and received therefor.

Baker, 453 S.W.2d at 809-10 (quoting Squire v. W. Union Tel. Co., 98 Mass. 232, 237-38 (Mass. 1867)).

In Baker, the Tennessee Court of Appeals reversed a trial court's denial of a directed verdict and dismissed plaintiff's breach of contract claim because his damages had not been contemplated by the parties when they entered into their contract. See id. at 810. The plaintiff in Baker was an electric company lineman who also trimmed and cut trees as a side job. Id. at 803-04. The lineman agreed to fell a tree on a church's property for $50, so long as the church provided people to help him. Id. at 804. The lineman began felling the tree on November 18, 1967, with the assistance of a person from the church, but was forced to stop because the lineman was concerned that, once cut, the top of the tree might fall on and damage a nearby automobile. Id. When the lineman returned to complete the job three days later, no one from the church was present to assist him. Id. He nevertheless climbed the tree and cut the top of the tree without assistance. Id. at 804-05. As the top fell to the ground, its limbs struck the lineman and "crushed him against the trunk of the tree, causing serious, painful and disabling injuries," including a crushed ankle. Id. at 806.

11

Despite his physical injuries, the Baker court concluded that the lineman had not established a claim for breach of contract because he had failed to show recoverable damages. Id. 809-10. In explaining that Baker's damages were not recoverable, the court asked:

> [H]ow can it be said that when the parties made the contract under consideration here both of them contemplated that if the church breached its contract by failing to furnish the plaintiff the necessary help and assistance that he needed to fell the tree, that the plaintiff would, nevertheless, climb the tree and without any assistance, saw the top of it out, push it with his hand, and then be struck and injured by it as it swung around and fell against him?

Id. at 810. Because the parties did not contemplate the lineman's conduct, "they did not contemplate or agree upon liability for any damages resulting from such conduct." Id. Therefore, damages were not recoverable, and the lineman's breach of contract claim failed. See id.

Plaintiff's breach of contract claim fails for the same reason as the lineman's claim in Baker. The Court has concluded that a reasonable jury might find that Northwest had breached its contract by failing to relay Glass' wheelchair request to Air Serv. (Order 29-30.) It cannot be said, however, that the Plaintiff and Northwest contemplated that, if Northwest breached its contract by failing to ensure that Glass received the wheelchair within ten minutes of his arrival, he would "ignore Patel's assurances that his wheelchair was on the way, leave the

12

gate area . . . , attempt to ascend an escalator using his walker, and fall and injure himself." (Order 17); see Baker, 453 S.W.2d at 810. Because the parties did not contemplate Glass' conduct, "they did not contemplate or agree upon liability for any damages resulting from such conduct." See Baker, 453 S.W.2d at 810. Plaintiff's breach of contract claim must fail as a matter of law. See id. (dismissing plaintiff's claim because he had not established recoverable damages).

Northwest's motion to revise is well-taken. Because Plaintiff must show recoverable damages to establish a claim for breach of contract under Tennessee law and has not done so, denying Northwest's motion for summary judgment would constitute a clear error of law. See C&W Asset Acquisition, 230 S.W.3d at 676-77; Apollo Hair Sys. of Nashville, 2005 WL 735032, at *4; Baker, 453 S.W.2d at 809-10. The Court GRANTS Northwest's Motion, AMENDS its Order, and GRANTS summary judgment in favor of Northwest on Plaintiff's breach of contract claim.[3]

### IV. Plaintiff's Motion

Plaintiff seeks revision of the Court's Order as to (1) her negligence claim against Air Serv; (2) her negligence and negligence per se claims against Northwest; and (3) her

---

[3] Because the Court concludes that Northwest's motion is well-taken on the ground stated, it need not address Northwest's arguments that Glass' leaving the gate area made Northwest's performance impossible, that Plaintiff failed to prove the contract's terms and conditions, and that punitive damages are not recoverable under a breach of contract theory. (See Northwest's Mem. 3-8, 12-16.)

negligence, negligence per se, and breach of contract claims against Pinnacle. (See Pl.'s Mem. 2-20.)  She argues that the Court committed errors of law in granting summary judgment on those claims.  See Louisville/Jefferson Cnty. Metro Gov't, 590 F.3d at 389; (Pl.'s Mem. 2-20).

### A. Air Serv

Plaintiff argues that the Court erred in granting Air Serv's motion for summary judgment "at least in part because it did not construe the evidence in a light that is most favorable to the Plaintiff." (Mem. in Supp. of Pl.'s Mot. to Reconsider, ECF No. 221-1.) ("Pl.'s Mem.")  According to Plaintiff, "construing the evidence in a light most favorable to the Plaintiff, it is clear that [Air Serv] had between twenty-six minutes, and perhaps as much as fifty-four minutes, between the time it was first notified of Mr. Glass' need for [a] wheelchair and his fall."  (Id. at 2.)  Air Serv asserts that less than fifteen minutes elapsed between Patel's calling Air Serv to request wheelchairs for passengers on Glass' flight and Glass' leaving the gate area and that any time that elapsed after Glass left the gate area is irrelevant. (See Air Serv's Resp. 2-4.)

To show that Air Serv had notice of Glass' need for a wheelchair before he requested one on entering the gate area, Plaintiff relies on Patel's deposition and the Air Serv's dispatch log. (Pl.'s Mem. 3.)  In the relevant portion of his

14

deposition, Patel stated that he had requested two wheelchairs for passengers on Glass' flight before it arrived and that one of those calls was for Glass. (See Patel Dep. 20:8-21:13, Dec. 8, 2009, ECF No. 133.) Air Serv's dispatch log shows Air Serv received calls for passengers on Glass' flight at 8:24 a.m., 8:25 a.m., and 8:29 a.m. (See Ex. B., ECF No. 221-3.) According to Plaintiff, the Court must conclude that Air Serv had notice of Glass' need for a wheelchair no later than 8:29 a.m. (See Pl.'s Mem. 3.)

Although the dispatch log shows that Air Serv received calls at 8:24 a.m. and 8:25 a.m., there is no record of an 8:29 a.m. call. (See id.) According to the log, neither call was on Glass' behalf. (See id.) The 8:24 a.m. call was for a passenger named "Diaz" and the 8:25 a.m. call was for a passenger named "Goff."[4] (See id.) That said, drawing all reasonable inferences in favor of Plaintiff, a reasonable jury could conclude, based on Patel's testimony, that one of Patel's pre-arrival calls was on Glass' behalf.

---

[4] The log appears to contradict Plaintiff's current position that Patel called to request a wheelchair for Glass before he had left the aircraft and to confirm Plaintiff's earlier position, taken in response to Air Serv's motion for summary judgment, that none of the calls Patel had made before Glass left the aircraft was on Glass' behalf. (See Pl.'s Resps. to Def. Air Serv Corporation's Statement of Undisputed Material Facts ¶ 14, ECF No. 174-1; see also Order 5 n. 4.)

There is no dispute that Glass' flight arrived "at approximately 8:30 a.m." (See Am. Compl. ¶ 15; Def. Air Serv Corporation's Answer to First Am. Compl. ¶ 15, ECF No. 106.) If one of Patel's calls was for Glass, Air Serv had notice of his need for a wheelchair between 8:24 and 8:29 a.m. (See Ex. B.) According to a video timeline prepared by the Airport, Glass left the aircraft at 8:43 a.m. and left the gate area at 8:48 a.m. (See Ex. C, ECF No. 221-4.) Therefore, drawing all reasonable inferences in favor of Plaintiff, Air Serv had notice of Glass' need for a wheelchair before he left the aircraft and for approximately twenty-four minutes before he left the gate area.[5] However, even drawing all reasonable inferences in favor of Plaintiff, Glass waited in the gate area no more than ten minutes.[6] (See Ex. C; Patel Dep. 34:10–34:15)

Having shown that, drawing all reasonable inferences in her favor, Air Serv had notice of Glass' wheelchair request before he left the aircraft and requested one from Patel, Plaintiff

---

[5] The Court need not address Plaintiff's argument about her inability to produce the "Northwest List." (See Pl.'s Mem. 8-10.) In its Order, the Court stated, "The fatal flaw in Plaintiff's argument is that she has not introduced the Northwest List," but, in actuality, the fatal flaw in her argument was more general—that she had not proffered any evidence showing that Air Serv had notice of Glass' wheelchair request before he requested one from Patel on arrival. (See Order 14-15.) Because Plaintiff has directed the Court to Patel's deposition testimony stating that one of his pre-arrival telephone calls was to request a wheelchair for Glass, she has shown evidence that might support a reasonable jury's conclusion that Air Serv had notice of Glass' need for a wheelchair before he arrived.

[6] In opposing summary judgment, Plaintiff argued that Glass waited up to eleven minutes in the gate area after leaving the aircraft, but does not appear to contest that fact now. (See Pl.'s Statement to Air Serv. ¶ 22, ECF No. 174-1.)

argues that Air Serv had a duty in tort to provide Glass with a wheelchair within a reasonable time. (Pl.'s Mem. 5-8.) She asserts that the Court's conclusion that Air Serv had no duty is a clear error of law. (See id.) Air Serv argues that the Court did not clearly err in concluding that Air Serv had no duty to arrive with Glass' wheelchair before he left the gate area. (See Air Serv's Resp. 4-5.)

There is some authority for imposing a duty on Air Serv in this context. Where plaintiff's negligence claim is premised on "a failure to act for the protection or assistance of another, there is normally no liability unless some relation between the actor and the other, or some antecedent action on the part of the actor, has created a duty to act for the other's protection or assistance." Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 360-61 (Tenn. 2008) (citation omitted). However, "[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully." Bennett v. Trevecca Nazarene Univ., 216 S.W.3d 293, 300 (Tenn. 2007) (citation and internal quotation marks omitted); Biscan v. Brown, 160 S.W.3d 462, 482-83 (Tenn. 2005) (citation omitted).

Tennessee courts have relied on the Restatement (Second) of Torts in deciding whether a party has assumed a duty to act. See Barron v. Emerson Russell Maint. Co., No. W2008-01409-COA-R3-CV, 2009 WL 2340990, at * 7-8 n.5 (Tenn. Ct. App. June 30,

17

2009) ("[T]he Tennessee Supreme Court has quoted and applied the conditions set out in Restatement § 324A(a)-(c) in a context indicating that those conditions establish the applicable bases for liability when there has been a breach of the assumed duty of reasonable care." (citation and internal quotation marks omitted)); see also Biscan, 160 S.W.3d at 483; Burks v. Kroger Co., Nos. M2008-02664-COA-R3-CV, M2008-02667-COA-R3-CV, 2009 WL 4059145, at *6 (Tenn. Ct. App. Nov. 23, 2009). The relevant Restatement section provides:

> One who undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person . . . , is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965). "Whether or not a person has assumed a duty to act is a question of law." Biscan, 160 S.W.3d at 483 (citation omitted).

Air Serv appears to concede that it assumed a duty to provide Glass with a wheelchair once it had notice of Glass' need for one. (See Air Serv's Resp. 4 ("The question is not whether Air Serv had a duty to provide a wheelchair within a

reasonable time after notice. Of course it did.").) The essence of Air Serv's argument is that, although it might have assumed some affirmative duty to provide Glass with a wheelchair, the scope of its duty did not require it to provide the wheelchair before Glass left the gate area. (See id. at 4-5.)

Courts define "the scope of a duty or a particular standard of care by looking to the statutes, regulations, principles, and other precedents that make up the law." Wilson v. E. Tenn. Human Res. Agency, Inc., No. E2010-01712-COA-R3CV, 2011 WL 1642441, at *7 (Tenn. Ct. App. Apr. 29, 2011) (citing White v. Metro. Gov't of Nashville & Davidson Cnty., 860 S.W.2d 49, 52 (Tenn. Ct. App. 1993)). They may also consider "evidence that tends to establish a custom representing the common judgment concerning the risks of a particular situation and the precautions to meet them." Id. (citation omitted). A company's internal policies and procedures may "demonstrate what the company's employees should have done in a particular situation." Id. (citation omitted).

There is no authority for concluding that Air Serv assumed the particular duty that Plaintiff seeks to impose on it. The only evidence in the record that tends to establish the scope of any duty that Air Serv might have assumed is the contract between Northwest and Air Serv (the "Northwest-Air Serv

Contract"). (See Ex. C, No. 157-4.) Under that contract, a passenger was not expected to wait more than thirty minutes for a wheelchair. (Id. § 7.2.2.) Air Serv was required to arrive with a passenger's wheelchair within thirty minutes of "aircraft block time," if the passenger's request was "planned," and within thirty minutes of a request being made, if the request was "unplanned." (See id. § 7.1.6.)

As noted, drawing all reasonable inferences in Plaintiff's favor, approximately twenty-four minutes elapsed between the earliest time that Air Serv could have received notice of Glass' wheelchair request and his leaving the gate area.[7] (See Ex. B; Ex. C.) Therefore, Air Serv had more than the ten minutes notice that the Court found in its Order. (See Order 16.) That does not necessarily mean that Air Serv had a duty to arrive with Glass' wheelchair before he left the gate area.

As the Court concluded in its Order, Glass' ignoring Patel's assurances that his wheelchair was on the way, leaving the gate area after having waited there for no more than ten minutes, attempting to ascend an escalator using his walker, and falling were not foreseeable. (See id. at 17.) Even if that

---

[7] Plaintiff argues that as many as fifty-four minutes passed between Air Serv's receiving notice and arriving with a wheelchair, but she includes time that elapsed after Glass had left the gate area. (See Pl.'s Mem. 4.) Plaintiff does not explain how the time that elapsed after Glass left the gate area is relevant. (See Ex. C.) To the extent she argues that Air Serv had a duty to prevent Glass from leaving the gate area or to search the Airport for him after he had left, her argument is not well-taken.

course of conduct might have been foreseeable,[8] as the Court explained in its Order, courts consider factors other than foreseeability when deciding whether a duty exists, including "the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995); see Giggers, 277 S.W.3d at 366 (explaining that, "when a minimum threshold of foreseeability is established, courts must engage in an analysis of the relevant public policy considerations," including the factors in McCall).

Plaintiff has not proposed any particular alternative conduct that would have prevented Glass' injury, other than to imply that Air Serv should have provided a wheelchair before Glass left the gate area. That would require Air Serv to provide a wheelchair more quickly than the Northwest-Air Serv Contract required it to do so—specifically, within twenty-four minutes, rather than within thirty minutes. (See Ex. C §§ 7.1.6, 7.2.2.)   In this context, that contract is the only

---

[8] Plaintiff argues that Glass' leaving the gate area without a wheelchair was foreseeable because Patel testified that other passengers who had requested wheelchairs had previously left gate areas without their wheelchairs. (See Pl.'s Mem. 7-8; Patel Dep. 26:9-12.) Patel's testimony does not address how long those passengers waited in the gate area, whether those passengers had been assured that their wheelchairs were in route, or any other details about those incidents. (See Patel Dep. 26:9-12.) That other passengers who had requested wheelchairs left without them would not make it foreseeable that Glass would ignore Patel's assurances, leave the gate area after having waited no more than ten minutes, attempt to ascend an escalator with his walker, and fall.

evidence suggesting the scope of Air Serv's duty and the feasibility of alternative conduct. See Wilson, 2011 WL 1642441, at *7. As the Court explained in its Order, Plaintiff has not shown that requiring Air Serv to respond to a wheelchair request more quickly than required under the Northwest-Air Serv Contract would be feasible or would increase safety. (See Order 19.)

There is some authority for the proposition that Air Serv assumed a duty to provide Glass with a wheelchair. However, Plaintiff has not shown that the Court committed a clear error of law in concluding that Air Serv had no duty to provide a wheelchair before Glass left the gate area under these circumstances. Therefore, Plaintiff's argument for revising the Court's grant of summary judgment in favor of Air Serv on Glass' negligence claim is not well-taken.

### B. Northwest

#### 1. Negligence

Plaintiff argues that the Court erred in concluding that, to establish a negligence claim, she needed to show that "an airline carrier has an affirmative duty to provide a wheelchair for any passenger who requests one within ten minutes of the passenger's arrival." (See Pl.'s Mem. 10-11; Order 24.) Plaintiff argues that Northwest assumed a duty to provide Glass with a wheelchair when she purchased Glass' ticket on August 25,

2008, because she requested a wheelchair at that time and that Northwest breached its duty by doing "absolutely nothing to fulfill the request." (See Pl.'s Mem. 12-13.) Northwest argues that Plaintiff has not shown the Court erred in concluding it had no duty to provide Glass with a wheelchair within ten minutes of his entering the gate area. (See Northwest's Resp. 6-7.)

As noted, there is some authority for the proposition that, by assuming to act for the protection or assistance of another, a defendant also assumes a duty to act reasonably. See Bennett, 216 S.W.3d at 300; Biscan, 160 S.W.3d at 482-83. The scope of that duty, however, is defined by existing law and custom. See Wilson, 2011 WL 1642441, at *7.

Northwest arguably assumed a duty to provide a wheelchair for Glass based on Plaintiff's having requested wheelchair service when she purchased his ticket on August 28, 2011.[9] That does not mean that providing a wheelchair within ten minutes of his leaving the aircraft and requesting one was within the scope of that duty. See Wilson, 2011 WL 1642441, at *7. For the same reasons that Air Serv had no duty to provide a wheelchair to Glass before he left the gate area, Northwest had no such duty.

---

[9] It is unclear whether Northwest actually received notice of Plaintiff's wheelchair request that day. Plaintiff purchased the ticket not from Northwest, but from a third-party website. (See Northwest's Resp. 7-8.) However, Northwest knew of Glass' request before his arrival because it included his name on a list of passengers who had requested wheelchairs and transmitted that list to Pinnacle. (See Patel Dep. 20:21-22:5.)

Glass' conduct was not foreseeable, and Plaintiff has not shown alternative conduct that would have prevented the harm without imposing an onerous burden on Northwest.

Plaintiff has not shown that the Court committed a clear error of law in concluding that Northwest had no duty to provide a wheelchair before Glass left the gate area under these circumstances. Plaintiff's argument for revising the Court's grant of summary judgment in favor of Northwest on Glass' negligence claim is not well-taken.

## 2. Negligence Per Se

Plaintiff argues that the Court erred in concluding that she had not shown Northwest's violation of a statute or regulation, a necessary element of her negligence per se claim. (See Pl.'s Mem. 13-14.) She argues that the Court's reliance on Glatfelter v. Delta Air Lines, Inc., 558 S.E.2d 793 (Ga. App. 2002), was misplaced because, unlike the defendant airline in that case, Northwest had over two weeks notice of Glass' need for a wheelchair, and, therefore, there is a genuine issue of fact about whether Northwest violated 14 C.F.R. § 382.39, a regulation promulgated under the Air Carrier Access Act of 1986 ("ACAA"). (See id.) Northwest argues that the Court's reading of and reliance on Glatfelter was proper. (See Northwest's Resp. 12-13.)

24

In Glatfelter, a well-reasoned and persuasive opinion from Georgia, a husband and wife alleged that Delta Air Lines, Inc. ("Delta") had violated the ACAA by failing to provide a wheelchair to the husband before they left a gate area of the Atlanta airport after having waited between fifteen and twenty minutes. See 558 S.E.2d at 795-96. Although their daughter had requested wheelchair service when she purchased their tickets, the court did not focus on that fact in deciding Delta's liability under the ACAA. See id. Instead, the Glatfelter court explained that the ACAA is not a strict liability statute and that "a minimal delay in providing the requested assistance does not constitute a violation." Id. at 796 (citation omitted). The court used "delay" to refer the couple's fifteen-to-twenty minute wait in the gate area after their flight had arrived, not the time that elapsed between their daughter's purchasing their tickets and their leaving the gate area. See id.

Although Plaintiff argues that any delay in Northwest's providing a wheelchair to Glass was not minimal because it had over two weeks notice of his request, the time that elapsed before Glass' flight arrived at the Airport is irrelevant. The relevant time period is Glass' wait in the gate area. See id. Glass left the gate area approximately twenty-four minutes after Patel's first call to Air Serv, with which Northwest had

25

contracted to provide wheelchair service for its passengers, and no more than ten minutes after Glass had left the aircraft and entered the gate area.  (See Ex. B; Ex. C; Patel Dep. 34:10-34:15)  Therefore, like the plaintiffs in Glatfelter, any delay Glass experienced was minimal.  See 558 S.E.2d at 796.

Plaintiff has not shown that the Court's conclusion that Northwest did not violate the ACAA was clearly erroneous.  Her argument for revising the Court's grant of summary judgment in favor of Northwest on Glass' negligence per se claim is not well-taken.

### C. Pinnacle

Plaintiff argues that the Court should revise its decisions on her negligence, negligence per se, and breach of contract claims against Pinnacle.  (See Pl.'s Mem. 14-19.)

### 1. Negligence

Plaintiff argues that the Court erred in concluding that Pinnacle had no duty to provide Glass with a wheelchair.  (See Pl.'s Mem. 14-16.)  She argues that Pinnacle had notice of Glass' need for a wheelchair before he arrived at the Airport and that Glass' leaving the gate area before his wheelchair arrived was foreseeable.  (See id.)  Pinnacle argues that it relayed Glass' wheelchair request to Air Serv and that it had no duty to provide a wheelchair before Glass left the gate area.  (See Pinnacle's Resp. 6-10.)

26

As noted, there is some authority for the proposition that, by assuming to act for the protection or assistance of another, a defendant also assumes a duty to act reasonably.  See Bennett, 216 S.W.3d at 300; Biscan, 160 S.W.3d at 482-83.  The scope of that duty, however, is defined by existing law and custom.  See Wilson, 2011 WL 1642441, at *7.

Glass' boarding pass demonstrates that wheelchair service had been requested for his Northwest flight, and Pinnacle operated that flight for Northwest.  (See Ex. A, ECF No. 221-2.) Patel called Air Serv to request a wheelchair for Glass before his flight arrived.  (See Patel Dep. 20:8-21:13.)  Based on that evidence, Pinnacle arguably assumed a duty to provide a wheelchair for Glass before he requested one from Patel on arriving at the Airport.  That does not mean that providing a wheelchair within ten minutes of his leaving the aircraft and requesting one was within the scope of that duty.  See Wilson, 2011 WL 1642441, at *7.  For the same reasons that Air Serv and Northwest had no duty to provide a wheelchair to Glass before he left the gate area, Pinnacle had no such duty.  Glass' conduct was not foreseeable, and Plaintiff has not shown alternative conduct that would have prevented the harm without imposing an onerous burden on Pinnacle.

Plaintiff has not shown that the Court committed a clear error of law in concluding that Pinnacle had no duty to provide

a wheelchair before Glass left the gate area under these circumstances. Plaintiff's argument for revising the Court's grant of summary judgment in favor of Pinnacle on Glass' negligence claim is not well-taken.

### 2. Negligence Per Se

Plaintiff argues that the Court erred in concluding that she had not shown Pinnacle's violation of a statute or regulation, a necessary element of her negligence per se claim. (See Pl.'s Mem. 16-18.) She argues that the Court's reliance on Glatfelter was misplaced because Pinnacle had notice of Glass' need for a wheelchair when it learned that it would be operating Glass' flight for Northwest. (See id. at 17-18.) Pinnacle argues that the Court's reliance on Glatfelter was proper. (See Pinnacle's Resp. 11-12.)

In substance, Plaintiff's argument about why summary judgment was improper on her negligence per se claim against Pinnacle is the same as her argument about why summary judgment was improper on that claim against Northwest—that Glatfelter's analysis does not apply to her claim because Glass did not experience a "minimal delay." (See Pl.'s Mem. 16-18.) As noted, the delay to which the Glatfelter court was referring was the couple's wait in the gate area after they had arrived, not the time that had passed before they had arrived in the gate area. See 558 S.E.2d at 795-96. That Pinnacle might have known

of Glass' wheelchair request when it learned it would operate Glass' flight is irrelevant to Plaintiff's negligence per se claim against Pinnacle.   For the reasons stated in discussing Plaintiff's claim of negligence per se against Northwest, any delay Glass experienced was minimal.

Plaintiff has not shown that the Court's conclusion that Pinnacle did not violate the ACAA was clearly erroneous.   Her argument for revising the Court's grant of summary judgment in favor of Pinnacle on her negligence per se claim is not well-taken.

### 3. Breach of Contract

Plaintiff argues that the Court erred in concluding that Pinnacle had not assumed Northwest's contractual duty to Glass. (See Pl.'s Mem. 18-19.)   She argues that a reasonable jury could conclude that Northwest had assumed those duties based on Glass' boarding pass.   (See id.)   Pinnacle argues that Glass' boarding pass is immaterial to the issue of whether it had assumed Northwest's contractual duty to Glass.   (See Pinnacle's Resp. 13-14.)

Glass' boarding pass stated that his flight was "Operated by [1] Pinnacle Airlines."   (See Ex. A.)   Based on the boarding pass, a reasonable jury might conclude that a contractual relationship existed such that Pinnacle operated certain flights for Northwest, including Glass' flight.   However, nothing about

29

the boarding pass demonstrates that Pinnacle assumed all of Northwest's contractual duties to its passengers, including providing them with wheelchair service. Even if Pinnacle assumed those duties, the Court has concluded that Plaintiff cannot recover for breach of contract against Northwest because she has failed to show recoverable damages—a necessary element for a breach of contract claim under Tennessee law. For the same reason, Plaintiff's breach of contract claim against Pinnacle must fail.

Plaintiff has not shown that the Court's conclusion that Pinnacle did not have a contractual duty to Glass was clearly erroneous. Her argument for revising the Court's grant of summary judgment in favor of Pinnacle on her breach of contract claim is not well-taken.

### V. Conclusion

Based on the foregoing, the Court GRANTS Northwest's Motion, AMENDS its Order, and GRANTS summary judgment in favor of Northwest on Plaintiff's breach of contract claim against it. The Court DENIES Plaintiff's Motion. Because the Court has granted summary judgment on all of Plaintiff's claims, all other pending motions are DENIED as moot.

So ordered this 28th day of June, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.

UNITED STATES DISTRICT JUDGE